No. 2184.—ENOCH J. BARKSDULL, for the use of his minor child CHARLES RANSON BARKSDULL, *v.* THE NEW ORLEANS AND CARROLLTON RAILROAD COMPANY.

A street railroad company is responsible in damages if, through the negligence or carelessness of the driver of the street car, a boy is run over and injured. The measure of the damages in such cases is to be determined by the extent of the injury done. If the finding of the jury is supported by the evidence in the record both as to the fact of the infliction of the injury through the carelessness and negligence of the driver of the car and the extent of the injury done, their verdict fixing the amount for which the company is liable, will not be disturbed on appeal.

If the evidence shows that the boy who was run over by the car, was physically and mentally able to take care of himself on the street, and that he was in the habit of traveling the public streets alone, the driver of the car or the company owning the road will not be permitted to set up in defense to the action for damages, that the accident occurred through the negligence or want of consideration in the father in allowing the child to go on the streets alone, nor will the fact that the child failed to get out of the way be allowed to weigh in favor of the company in mitigation of damages, if the evidence shows, as in this case, that the driver was driving the car at the time of the accident at an unusual, if not an unlawful, rate of speed. But in such case the company will be held liable to the full extent of the damages caused by the injuries which the boy has sustained.

APPEAL from the Sixth District Court, parish of Orleans. *Cooley,* J. *Gibson & Austin, Rufus Waples* and *W. H. Hunt,* for plaintiff and appellee. *L. E. Simonds,* for defendant and appellant.

This case was tried by a jury in the court below.

TALIAFERRO, J. This is an action brought by a father for the use of his minor child against the defendants to recover damages for alleged injuries of a most serious character inflicted upon the child, a boy of about the age of five years and a half, through the gross and culpable carelessness and negligence of a car driver, an agent and employe of the company, by which negligence the child was run over by one of their street cars and horribly mangled, having both his legs

crushed, making it necessary to amputate both, one above the knee, thus rendering him a hopeless cripple for life. The plaintiff prays damages to the amount of fifty thousand dollars.

The answer is a general denial. The defendants specially deny the culpable negligence charged and say they are not liable in damages to the plaintiff.

The case in the lower court was before a jury which gave a verdict of fifteen thousand dollars as damages, and from the judgment, responsive to the verdict, the defendants have appealed.

We gather from the evidence that the deplorable accident happened on the nineteenth of June, 1866, at the intersection of St. Charles and St. Mary streets in the city of New Orleans. There is much difference in the statements of witnesses as to the precise spot where the car ran over the child. Not long before the accident he was seen sitting on the end of one of the cross-ties which projected several feet beyond the car track and partly over the ditch on the right hand side of St. Charles street in coming down from Carrollton. The distance between the centre of this tie and the upper crossing of St. Mary street is shown to be six feet. But the inquiry regarding the *locus in quo* is satisfied by the concurrence of the witnesses in relation to where the child was lying after the car passed over him. He was found lying *in St. Mary street* near the upper crossing of that street over St. Charles street, which crossing is the first passed over at St. Mary street by cars coming down from the direction of Carrollton. The testimony of the newsboy, Confort, who was the first upon the spot after the accident and who took up the child, is very clear and distinct on this subject. He says: "Just as soon as he was run over I ran to him. There was nobody else with him. He was in the middle of the track on St. Mary street. He was lying where he was run over, lying in the same place." It is in proof that at the time of the occurrence two horse cars and a train of steam cars were coming down St. Charles street and were near each other. One of the witnesses says the horse cars were racing, and four of the witnesses at least say that the car which ran over the boy was moving rapidly. One of them states that "the driver was whipping his mule;" "on this occasion the mule was put to his best." Another says: "He was whipping the mule very fast; the mule was in a gallop; both horses were in a gallop in the other car." A third witness says: "I do know the two cars were *running*, Mr. Burke (the name of the driver implicated) and another car; it was one of those long cars." A fourth said: "The mule was going pretty fast because the driver could not stop it; he would not stop it altogether, but he was going to stop it some; I knew he was behind time because he had plenty of passengers." The driver himself on the stand said: "I put on the brakes and the harder I put on the brakes the harder the

mule pulled; the brake did not have the desired effect on the car or account of having so many passengers; if it was not for that, I might have stopped the car before the child was run over." In answer to the question : " How many passengers had you ? " he replied : " Seventeen or eighteen, perhaps twenty, I can not exactly say; I had four on the platform, the two sides were full and they were standing up inside."

The testimony establishes clearly that the car was going at a greater speed than usual and greater, we infer, than that permitted by the city ordinances, for we find that the steam cars were not allowed within the city limits to run at a faster rate than four miles per hour. One of the witnesses thought that the car, as it passed him between Jackson and St. Andrew streets, " was going at the rate of eight miles an hour." The mule it seems was not a safe and properly trained animal for the business. The driver stated that the steam cars passed him about half a square back from where the accident happened; that he saw the mule begin to shy and become excited on seeing the steam train, and it was then he put on the brakes but ineffectually.

There are two bills of exceptions in the record to the charge given by the judge to the jury on the trial of the case in the lower court. It is not necessary in determining this case to pass upon them specially. They relate to the rules in regard to what is termed contributory negligence. These rules have no application to the facts shown in this case. It is proved that the boy who was overtaken by this terrible disaster, is a child of more than ordinary activity and intelligence; that he was capable of taking care of himself; that his parents frequently sent him about on errands and on several occasions to get things at the Magazine Market, many squares off from the place of their residence. There is no question that he was run over while endeavoring to cross St. Charles street on the upper crossing of St. Mary street. He had a right to be on the streets, and it was no carelessness in his father to permit him to be upon them.

On the other hand the evidence does show on the part of the driver, if not a malicious carelessness, at least a negligence and want of care highly culpable in a man whose duties require him to be constantly on the alert and to exercise judgment and caution in the performance of those duties. Apart from its responsibilities for the acts of its agents, we are not prepared to say that the company may not have been remotely at fault in the matter of supervision over the manner in which their business was conducted. The developments of this case, we will further remark, present in our opinion matter of grave consideration for the law maker and which should suggest to him things *dignas lege regi.*

The judgment of the lower court, we think, was properly rendered, and it is therefore affirmed.