### LYNCH *v.* NEW YORK, L. E. & W. R. Co.

(*Supreme Court, General Term, Fifth Department.* April 13, 1892.)

INJURY TO RAILROAD EMPLOYE—LOW BRIDGE—CONTRIBUTORY NEGLIGENCE.

In an action against a railroad company for the death of plaintiff's decedent, it appeared that decedent, a brakeman, was killed while on the deck of a box-car by striking the beam of a bridge under which the train was passing; that the car was 16 or 18 inches higher than those commonly used, and decedent could not pass under the bridge, standing erect on the car; that he mounted the car either under the danger signals, or near them, on the side towards the bridge; that there was nothing to obstruct decedent's view of the danger signals or of the bridge. *Held,* that a judgment of nonsuit was properly entered. *Rock* v. *Mining Co.*, (Sup.) 15 N. Y. Supp. 872, followed.

Appeal from circuit court, Cattaraugus county.

Action by Jane Lynch, administratrix, against the New York, Lake Erie & Western Railroad Company to recover damages for the death of Frank Lynch, deceased. From a judgment of nonsuit, plaintiff appeals. Affirmed.

Argued before DWIGHT, P. J., and MACOMBER and LEWIS, JJ.

*F. H. Dowd,* for appellant. *J. G. Johnson,* for respondent.

MACOMBER, J. The plaintiff's intestate was killed on April 8, 1890, while engaged in the duties of a brakeman upon the cars of the defendant, at a point about one and one-half miles west of West Salamanca, in the town of Salamanca, N. Y. The deceased had been in the employment of the defendant as a brakeman up to the time of his death, for a period of two months and eight days, and had previously worked for the defendant as a section hand for three years. His duties as brakeman were upon through freight trains, except for about three weeks next preceding the time of the accident which resulted in his death. He came to his death when on the deck of a box-car by collision with the beams of a bridge which had been erected over the railroad tracks five years previously. This bridge is shown to have been 17 feet and 10 inches in the clear from the rail to the under side of its timbers. Ordinary box-cars, such as were operated at this time by the defendant, with a man of ordinary height standing thereon, would pass under this bridge without danger; but the car upon which the intestate was riding at the time was 16 or 18 inches higher than the ordinary box-car, and so high in fact that the plaintiff, who is shown to have been a man 5 feet and 5 or 6 inches in height, could not, while standing upon this car, pass safely under the bridge. The statute (Laws 1884, c. 439) requiring the company to erect and maintain warning signals at every low bridge or structure which crosses the railroad above its tracks, where such warning signals may be necessary for the protection of employes on the top of cars from injury, had been observed by the defendant, and dropping-ropes or "tell-tales" had been suspended over the tracks on either side of the bridge at a distance of 200 feet therefrom, designed to warn brakemen of approaching danger. In this instance, how-

ever, the brakeman seems to have passed to the top of this car for the purpose of setting a brake to hold the train, and actually mounted the car either directly under the tell-tales, or very near them, but on the side of them towards the bridge. It was shown in the evidence that this bridge was lower than many other bridges of the defendant on the same section between Meadville and Salamanca. The car upon which the deceased was riding was moving at about 15 miles an hour. There appears to have been nothing to obstruct the view of the deceased, had he attempted to see the stationary signals which had been hung by the defendant. Indeed, a witness called by the plaintiff testified that he could, at a distance of about 700 feet, clearly see the deceased mount the car, and proceed towards the brake, and that there was nothing to obstruct his view, and thus, inferentially, the view of the brakeman, of the approaching danger. At the close of the plaintiff's case in chief, on motion of the defendant's counsel, a nonsuit was granted, obviously upon the ground that the plaintiff had failed to show negligence attributable to the defendant, or the freedom from negligence on the part of the deceased. Her counsel asked that the question of the construction of the bridge and the use of the unusually high box-car should be submitted to the jury as an omission of duty on its part to the deceased. He also asked to go to the jury upon the question whether the deceased was guilty of any negligence, under the circumstances. The exception to the direction of the court, and its refusal to submit these matters to the jury, raises the principal question in the case.

The proposition has so frequently been stated that it may be deemed to be elementary, that when the deceased entered into the employment of the defendant he assumed the usual risks and perils of the service in which he was to be engaged, as well as the risks and perils incident to the operation of such cars as were then actually used by the defendant, and such others as were proper to be used by it. Accepting service with the knowledge of the character and position of the structure from which the employe might be liable to receive injury, he could not call upon the defendant to make alterations to secure greater safety, or, in case of injury from risks which were apparent, he could not call upon his employer for indemnity. *Gibson* v. *Railway Co.,* 63 N. Y. 452. In that case the plaintiff's intestate, who was in the employ of the defendant as a conductor of a freight train, while upon his train, was struck and killed by a projecting roof of a depot building. He was shown to have been familiar with the road at that locality, and it did not appear that any change had been made in the building or in the road after he entered upon his employment. In an action to recover damages for his death, it was held that the peculiar character of the roof and its near approach to passing cars was as patent to the deceased as to the defendant's officers or agents, and that the employe assumed the risk when he entered upon the employment, and that the defendant was not liable. In the case of *Fitzgerald* v. *Railroad Co.,* (Sup.) 12 N. Y. Supp. 932, it was held that no recovery could be had for injuries to a brakeman by striking against a low bridge under which his train was passing before daylight, where it appeared that the brakeman knew the location of the bridge, and had passed under it at other times, and had been cautioned against, even though warning signals had not been erected at such bridge, as required by section 2, c. 439, Laws 1884. But we are not inclined to adopt the doctrine of that case in its full scope, as it appears to be reported, nor is it necessary to rely upon the same for the purpose of maintaining the judgment in this case. In *Williams* v. *Railroad Co.,* 116 N. Y. 628, 22 N. E. Rep. 1117, the plaintiff was in the defendant's employment as a brakeman upon a freight train. While standing upon the top of a car, he was struck by a bridge over the track, and was injured. He had run upon this train for three weeks, and during that time had passed daily under the bridge, and frequently on top of the car, where he was required to be in the performance

of his duty. His injuries were received in the day-time. The bridge was in plain sight, and, knowing that the train was about to pass under it, he turned his back to it, and was going towards the rear of the car when he was struck. It was there held that a refusal to nonsuit was error, and that the plaintiff, had he exercised ordinary care and observation, must have known that the bridge was not of sufficient height to permit a person to pass under it, standing on the top of a car. That case seems to have been decided irrespective of any consideration of the law relating to signals or tell-tale.

But the principal question now before us was passed upon by this court in the case of *Rock* v. *Mining Co.*, (Sup.) 15 N. Y. Supp. 872. In that case the plaintiff, while employed as a brakeman on the defendant's railroad, was knocked from the top of a box-car by a trestle under which the car was passing. The space between the trestle and the running-board of the cars commonly used was 5 feet 7½ inches, and the plaintiff was 5 feet 8 inches in height, but, by stepping off the running-board to one side of the car, the plaintiff could pass under the trestle standing erect. The car on which the plaintiff was injured was higher than the ordinary by upwards of a foot, leaving a space of but 4 feet 5½ inches between the running-board and the trestle. The larger car had been in use to some extent, to plaintiff's knowledge, for three months before the accident, and the plaintiff was familiar with the situation. It was there held that no recovery could be had. In that case, as well as in the one before us, the plaintiff knew of the overstructure. He had known for some time that there was nothing to spare between the running-board of the ordinary car and the trestle. He knew, or must have been charged with knowledge, of the increased height of a large car over those in common use; for such height was plainly to be seen when the car was brought in juxtaposition with other cars, as was the fact in both cases. The case last cited seems to be controlling, so far as this court is concerned, of the question presented by this appeal, and it follows, therefore, that the judgment entered upon the nonsuit should be affirmed. All concur.