*1265 The opinion of the court was delivered by
Nicholls, C. J.
Plaintiffs have appealed from the action of the District Court in sustaining an exception that plaintiffs’ petition discloses “ no cause of action ” and decreeing that their demand be .rejected.
In the petition in the ease plaintiffs alleged that on or about July 1, 1894, James B. Gusman, a son o'f petitioners, from the marriage between them, was employed by Ernest Wailles, an officer of the >Oa£fery Central Refinery and Railroad Company, Limited, and of the Franklin & Abbeville Railroad Company, as fireman on a locomotive (owned by the latter company, or by both of them), then used and ■operated by them both in the business in which they were engaged for their common benefit, as would thereafter be more fully set out. 'That Wailles was local manager of the Caffery Central Refinery and Railroad Company, Limited, and also manager of the Franklin & Abbeville Railroad Company, and was in full charge •and authority over the Caffery Central Refinery, owned by the former corporation and operated by them, and was also in full control over the cars, operation and operatives of the Franklin & Abbeville Railroad Company, and had full power and authority to employ and discharge all persons employed in and •about said Caffery Central Refinery and the ears and locomotives of the Franklin & Abbeville Railroad Company, and especially to employ petitioners’ said son. That the Caffery Central Refinery is a large factory for the manufacture of sugar from cane and syrup, situated in the parish of St. Mary, near the "town of Franklin, on the extensive grounds on which the Caffery •Central Refinery and Railroad Company, Limited, have constructed and built numerous railroad switches and tracks for the hauling of cane and syrup from their said factory; that the Franklin & Abbeville Railroad Company is a mere adjunct to the said •Caffery Central Refinery & Railroad Company, Limited, as it has been conducted since its organization for no other purpose than to enable the said Caffery Central Refinery and Railroad Company to lay a road to the sugar plantations from which they receive their supply of sugar cane, and to haul the said cane to the said factory; that the railroad built by the Franklin and Abbeville Company is never operated in any other business than that of the said Caffery ^Central Refinery and Railroad Company, Limited, and never except *1266 at the times and seasons when the said company is in operation; that practically the whole of the stock of the Franklin & Abbeville Railroad Company is owned by the Caffery Central Refinery Company; that the Franklin & Abbeville Railroad Company is controlled and operated, and all their affairs directed by the Caffery Central Refinery Company and was so controlled and operated at the time of the employment of petitioners’ son and of the injury received by him as stated below. That the management of both corporations is one and the same and their business is so completely blended and inseparable that although they are informed the pay of their son was charged upon their books or account to the Franklin & Abbeville Raih'oad Company, yet they charge that the Caffery Central Refinery and Railroad Company, Limited, was equally the master of their son in his said employment, or really and substantially wholly so, as the said Franklin & Abbeville Railroad Company has only a nominal and fictitious existence as an independent corporation; their son being, at all times, under the control and direction of the officers of the Caffery Central Refinery and Railroad Company, Limited, and all his duties being really, though not nominally, for the service of the Caffery Central Refinery and Railroad. Company, Limited.
That the duties of their son in his said employment were prinei- . pally to keep up the fires of the said locomotive and to assist whenever required, or whenever circumstances made it necessary, irr doing the braking on the train hauled by said locomotive; and that the business of said locomotive was to haul cars and do switch work over the numerous tracks and switches on the grounds of the Caffery Central Refinery and Railroad Company, Limited, and over-, the switch running from the tracks of the Southern Pacific Company to the Caffery Central Refinery.
That on the grounds of the Caffery Central Refinery, the Caffery Central Refinery and Railroad Company, Limited, had erected, prior to July 1, 1894, a frame or derrick over one of the said switches, which frame consisted of two upright posts some twenty feet high planted on either side of the said switch and of a cross beam of heavy timber-standing at right angles over and across the said switch and attached to and supported by the said upright posts, which cross beam stood about four and a half or four feet above the top of a box car of the ordinary height; that the said cross beam was too low to permit a. *1267 brakeman standing erect on the top of such a box car to pass beneath it in safety, and that only by stooping or dodging could the same be avoided by a brakeman in such position, all to the full knowledge of said corporation. That the said frame was erected for the purpose of loading and unloading barrels from and on the flat ears, a block and tackle being attached to the cross beam for the purpose of hoisting said barrels; that the said contrivance had been found clumsy and impracticable, and had, prior to July 1, 1894, been abandoned, and after that time was used for no purpose whatever, and was a useless obstruction which should have been removed and should never have been erected. That said cross beam could easily, and without any expense or inconvenience or impediment to the work for which it was designed, have been'raised to a height sufficient to enable a person standing on a box car to pass under without danger, and that not so to build and elevate it was great negligence on the part of said corporation.
That the constructing and maintaining of said hoisting frame was gross, wanton and culpable negligence on the part of the Caffery Central Refinery and Railroad Company, Limited, and of the Franklin & Abbeville Railroad Company, because the said contrivance was essentially murderous, a man-trap built with a reckless and wanton and criminal disregard of human life.
That on July 24, 1894, while their son was acting as brakeman, according to his employment, his duties required his presence on the top of a box car of the customary height, then in transit over the said switch over which hung said cross beam. " That the train, of which the car on which their son was formed part, rapidly approached the cross beam, their son being a few feet from the rear of the said car, near the brake, with his back turned to the said beam; that he nevertheless was on the lookout for the danger and stooped or dodged, but on stooping and endeavoring to escape the said beam he lost his balance and fell over between two cars to the ground, where he was horribly crushed by the cars and the wheels thereof. That their son prudently endeavored to avoid the dangerous obstruction, and did so with that amount of skill that would be expected of an ordinary man under like circumstances, and that his falling, therefore, was due wholly to the presence of Said cross beam over the said switch, and not to any fault or want of care on the part of their son. That their son was five feet eight inches in *1268 height. That immediately after their son received his injuries in the manner stated the said hoisting frame was removed, and that the same has not been rebuilt in any other position or in any other manner.
That the risk from the said extraordinary and useless obstruction was one which the said corporation had no right to impose on their employees; that their son, after said crushing and mangling, lingered many hours in great pain; that at times he was fully conscious of his situation, and. that to his bodily sufferings was added the keenest mental agony; that after enduring excruciating torture for thirty hours he finally, on July 26, 1894, died from the effects of the crushing and mangling received by him as aforesaid and of the suffering caused thereby. That their son was twenty-seven years of age at the time of his death, and unmarried; that he was earning wages of about forty-five dollars per month, nearly all of which he gave to petitioners for their household expenses; that he was a good and dutiful son, in whom petitioners took great pleasure and comfort, and whose death has distressed them and caused them sorrow beyond measure. That by the gross, wanton and culpable negligence of the said corporation in erecting and maintaining said dangerous contrivance, useless as it was, under their sole control and in causing the use of such switch in the unsafe condition described, and in running over such switch cars and train, manned by brakemen, whose duty necessarily require their presence on the top of cars, all as set out in the petition, and in so causing their son to fall and become wounded and mutilated he sustained through his said injuries and mental and bodily suffering, damage in the sum of ten thousand dollars, which petitioners are by law entitled to demand, and that by the same fault and negligence in causing to them the loss of their son, the loss of his comfort, help, affection and society and their consequent sorrow and distress they have suffered damage in their own right in the sum of ten thousand dollars. That the Caffery Central Refinery and Railroad Company, Limited, is responsible for all above acts and faults of the Franklin & Abbeville Railroad Company, and that the fault and negligence of one is that of both, and so that they are liable in solido for said sum.
Plaintiffs prayed that they recover judgment against the two corporations in,solido for the amount stated, with interest and costs.
Counsel of defendants in their brief say: “The only allegation of *1269 negligence on behalf of the defendant is having the beam so near the top of the cars. Defendants submit that from the allegations of the petition no cause of action is disclosed for the reason that it was one of the assumed risks of decedent’s employment, he having knowledge of the height of said beam and its position. The question of injuries of this kind is not new and has been decided by almost every court in the land, all of which, we believe, have maintained a doctrine that it is not negligence for a railroad company to construct, or permit to be constructed, overhanging bridges, water-spouts, coal sheds, eaves from sheds, etc., so low as not to permit a brakeman to stand upright on the top of a box car. That if the brakeman knew or was presumed to know of the existence of such obstruction he assumed the risk and could not recover.”
They quote from Brossman vs. Lehigh Railroad Company, 113 Penn. State, Reports, 490 (6 Atlantic Reporter, 226); Baylor vs. The Delaware, etc., R. R. Co., 40 New Jersey Law Reports, 23; Rock vs. Retsoff Mining Co., 15 New York Supplement, 872; Platt vs. Chicago, St. Paul & Missouri Railway Co., 51 N. W. Rep. 254; Lynch vs. New York, L. E. & W. R. R., 18 New York Supplement, 417, and Gibson, Adm’r, vs. The Erie Railway Co., 63 New York Reports, 449, in support of that position, and direct the attention of the court to numerous other decisions by reference.
Plaintiffs'maintain that the doctrine contended ior is not law and has never been recognized in Louisiana. They contend, on the authority of Sherman & Redfield on Negligence, 4 Ed. Sec. 198; Beach on Contributory Negligence, Sec. 134, and Patterson’s Railway Accident Law, Sec. 289:
1. That an overhead beam across the track of a railway company, which is too low for a brakeman to pass beneath while standing upon the top of a box car, is an essentially murderous contrivance, and its maintenance, especially after it has become useless, is gross negligence.
2. The risk of injury from such a structure is not assumed by an employee where the dangerous apparatus is under ’ the exclusive control of the employer and who could easily have removed it and whose duty it was to have done so.
We are of the opinion that the District Court erred in sustaining defendants’ exception. Defendants should answer and the issues be determined after all the facts and circumstances of the ease are *1270 before the court. It is rare that abstract propositions of law are so fixed and absolute as not to be modified or controlled by the special facts of the cases to which they arc sought to • be applied. While defendants’ proposition that “it is not negligence in a railroad company to construct or permit to be constructed overhanging bridges, etc., over its tracks so low as not to permit a brakeman to stand upright on the top of the box car” might be true in some special case under exceptional circumstances, it is certainly not true as a general proposition. On the other hand, were it true that if a brakeman knew or was presumed to know of -the existence of such a construction, he would be held, as a general rule, to have assumed the risk of injury therefrom; it is not true that the mere fact of such knowledge carries with it necessarily and on all occasions, and under all circumstances, the cutting off of remedy for injuries received by him from such constructions.
We are by no means prepared to say that plaintiffs could not, through testimony properly received, under their pleadings, present a state of facts such as would entail liability on the defendants upon the demand. It is particularly proper in cases of the character of the present, resting so largely on facts, that the rights and obligations of parties be tested after the entire situation has been developed and brought out by testimony.
For the reasons assigned it is ordered, adjudged and decreed that the judgment appealed from be annulled, avoided and reversed, and it is now ordered that the suit be reinstated, and the cause is hereby remanded to the lower court for further proceedings according to law.