(33 South. 587.)

No. 14,300.

KIRD v. NEW ORLEANS & N. W. RY. CO.*

(June 21, 1902.)

CARRIERS—INJURY TO PASSENGER—GROSS NEGLIGENCE.

1. To have its freight platform constructed so near to its track that the elbow of a passenger may come in contact with freight on the platform as the passenger is seated inside of a passing car, with his elbow resting for comfort on the sill of one of the windows of the car and protruding but slightly, is gross negligence on the part of a railway company, rendering it responsible in damages to a passenger injured under the above circumstances.

(Syllabus by the Court.)

Appeal from judicial district court, parish of Morehouse; W. J. Gray, Judge.

Action by Edmond Kird against the New Orleans & North Western Railway Company. Judgment for plaintiff. Defendant appeals. Affirmed.

Jonathan N. Luce, for appellant. E. Tyler Lamkin, for appellee.

PROVOSTY, J. The plaintiff's wife boarded the defendant's train at Oakridge station on her way to Monroe. She took a seat next

to a window, another woman of her own race occupying the other half of the seat at her left. The car moved on, and had gone about 150 feet, when plaintiff's wife's right arm was broken in two places, above and below the elbow, by coming in contact with a bale of cotton that stood on the freight platform of the defendant company, alongside of which the train was passing. Plaintiff sues in damages for the injury, and the defendant company answers that the accident was brought about by the negligence of the plaintiff's wife in putting her arm out of the car window.

The plaintiff's wife says that she and her seat companion were eating pinder candy, of which the supply was in a paper bag in her lap; that she was holding a piece of candy in her left hand, while her right was on her lap, her elbow resting on the window sill, when the window was darkened by the bale of cotton, and her arm was broken by being crushed against the jamb of the window; and that the broken arm dropped in her lap.

She is a talkative witness, given to details, and her testimony has about it an air of ingenuousness; but she says that she did not put her arm out of the window and wave good-by to her friend as the car was leaving the station, and that her arm at the moment of the accident was wholly inside of the car, no part of it projecting outside, whereas all the other witnesses who saw the accident testify that she did wave and that her arm was projecting.

Two of these witnesses testify that her arm was still extended out of the window in the act of waving at the moment of the accident; but the weight of the testimony is that she had ceased waving, and had drawn in her arm, and was merely resting it on the window sill.

The defendant's witness Brodnax, who had had his head out of one of the windows of the front car and had drawn it in just in time to avoid the cotton, testifies as follows: "After she ceased waving, she placed her arm on the window sill, with the elbow sticking six or seven inches out of the window. * * * A portion of the hand was out of the car window, I think, as best I remember."

The defendant's witness Drew, who was at the station looking at the train as it moved

off, and watching the arm, and within 150 feet of it, testifies as follows: "Q. Is it not a fact, Mr. Drew, that Melissa Kird's elbow, at the time the injury was inflicted upon her, extended over the car window, or out of the car window, only a very short distance or space? A. That's what I stated. Q. Is it not a fact that the elbow did not project or extend over the window sill two inches? A. I can't say that exactly. I say it extended over the window sill no further than the width of the arm. It was almost directly straight. Her arm was straight with the car when I saw it. Q. Her arm was almost straight with the window sill upon which it was resting? A. Yes, sir. Q. With the hand extending inward, or the inside of the car? A. I could not tell whether the hand was inside the car or hanging directly down. I couldn't see the arm at all, but just the elbow. Either the hand was bent inside the car, or down. I couldn't tell which."

Drew was in the better position for observation, and his attention was concentrated on the arm at the moment of the collision; hence we adopt his statement that the elbow was extending outside no further than the thickness of the arm.

Our conclusion from this testimony, taken in connection with that of plaintiff's wife, is that when the accident happened plaintiff's wife had ceased waving to her friends and had turned her attention to her candy, and that her arm had been drawn in and was resting on the window sill merely for comfort. So much for the proof of the alleged contributory negligence.

The bale of cotton, on the other hand, was so close to the passing car that, if it had been set there on purpose to catch any protruding elbow, or hand, or head, it could hardly have been stationed closer. If we go by the testimony of the mechanic, who, after the accident, was employed by the defendant's agent to saw off a part of the platform, and who says that he was instructed to cut off 2 feet, and that he did so after exact measurement, the space between platform and passing train was 1¾ inches at the north end of the platform, 3¾ inches at the south end, and 4¾ inches at the middle; and the bale of cotton may well have grazed the passing car, especially if the same

witnesses, Brodnax and Drew, are not mistaken in their statements that it projected beyond the edge of the platform, or if some allowance is made for the vacillation of the train. If we base ourselves on the inference that the planks of the curtailed platform were originally of the same length as those of the east platform, and that therefore the curtailment was of 15¼, instead of 24, inches, then the space between platform and passing train was from 9 to 10 inches, and between passing train and bale of cotton that same distance, less the projection of the bale of cotton, which projection was not less than 1 inch, and according to the witness Brodnax 4 inches. As the train pulled out the second time, it having backed to the station to put off the wounded woman, the two witnesses, Brodnax and Drew, observed closely to see how near it would pass to the bale of cotton. Drew was occupying his same position at the station, and Brodnax was on the train. According to the latter it passed very close, less than 6 inches; according to the former, it missed the bale of cotton by about 4 inches. Whether the collision had pushed the bale of cotton in, or had drawn it further out, is not known. Certain it is that this platform and this bale of cotton were close enough for their presence there to constitute on the part of the defendant company gross and culpable and inexcusable negligence.

And now the question occurs whether the defendant company is absolved from the consequences of this negligence by the alleged contributory negligence of the plaintiff's wife in letting her elbow project beyond the window sill.

Doubtless passengers should keep their persons within the car; there is abundant room for them to do so, and there is no necessity for them to stick their elbows outside; but the fact of the matter is that railway companies so construct their cars that the window sill at the passenger's side offers an inviting support to the arm, and in warm weather, when the sash is up, allures the arm to stretch along its airy surface, and notoriously passengers do yield to this temptation, and almost habitually do rest their elbow on the window sill, even at the risk of some part of it protruding beyond the line of the car. We do not think that an elbow protruding slightly under these circumstances ipso facto

forfeits the protection of the law and becomes free game to the negligence of the railway company. We think that a passenger has a right to rely upon there being a clearance space for the train of at least the thickness of an arm, and that the question whether the exposure of the arm to that extent shall constitute contributory negligence must be left to be decided according to the circumstances of each particular case.

In the instant case, we are satisfied that the plaintiff's wife was unaware of the danger,—nay, perhaps, unconscious of the fact that her elbow was protruding; so that her fault, if any, was slight, and only such as any passenger might in a moment of forgetfulness lapse into, and, even if her act had been deliberate, she had a right to rely upon there being a clearance space for the train of at least the thickness of an arm, whereas the platform was thus dangerously near without necessity or reason, or even excuse, and the defendant has confessed that much by having it cut. The dangerous closeness was the result of the unmitigated negligence of the defendant,—was a constant threat and menace to the safety of the passengers. It maimed the plaintiff's wife, and on the same occasion came near proving a death trap to the witness Brodnax, and. no telling how many like casualties it may have made imminent in the past. To absolve the defendant from responsibility under these circumstances would be to carry too far, we apprehend, the law of contributory negligence. In a recent case, where the negligence of the railway company was not near so direct or grave as in the instant case, this court held that the alleged contributory negligence of the passenger in permitting his elbow to protrude did not preclude recovery. Clerc v. Morgan Railroad & Steamship Company, 107 La. 370, 31 South. 886.

As to the. amount of the damages, $1,500, we have considered carefully the reasons adduced on one side for an increase, and on the other side for a reduction, and have come to the conclusion that, while the amount, perhaps, is somewhat scant, yet that, everything considered, justice has been done.

It is therefore ordered, adjudged, and decreed that the judgment appealed from be affirmed at the cost of the appellant.