No. 9758.

Orleans Appeal.

**EDWIN T. SHALLY, Tutor of Jas. Cantrelle, v. N. O. PUBLIC SERVICE AND SEWERAGE AND WATER BOARD, Appellants.**

(March 16, 1925, Opinion and Decree.)
(March 16, 1925, Concurring Opinion.)
(March 16, 1925, Judge Bell Dissents.)
(April 13, 1925, Rehearing Refused [Both Applications]).
(April 25, 1925, Judge Bell Dissents.)
(May 25, 1925, Decree Supreme Court Writ of Certiorari and Review Granted and Denied.)
(October 7, 1925, Decree Supreme Court. Judgment Court Appeal Affirmed. 105 Sou., Adv. Rep. No. 13, p. 606.)

*(Syllabus by the Court.)*

1. **Louisiana Digest—Carriers of Passengers and Goods—Par. 25, 38, 53.**

The carrier is bound to exercise the strictest diligence in receiving a passenger, in conveying him to his destination, and in setting him down safely, that the means of conveyance employed and the circumstances of the case will permit.

2. **Louisiana Digest—Carriers of Passengers and Goods—Par. 47, 51.**

Negligence is the failure to use such care and precaution as were necessary to avoid the danger which could and should have been anticipated by reason of which the plaintiff suffered his injury.

3. **Louisiana Digest—Carriers of Passengers and Goods—Par. 37, 53.**

Placing cement drainage pipes four feet high and eight feet long at a distance of four or seven inches from the body of a street car along a line of 250 feet is suggestive of danger to passengers standing upon the steps of the car preparatory to alighting and therefore negligent.

4. **Louisiana Digest—Carriers of Passengers and Goods—Par. 38, 47, 53, 61.**

It is not negligence for the passenger of a street car, in accordance with recognized custom, to rise from his seat and walk to the platform and thence to take a stand upon the steps of the car preparatory to alighting therefrom.

5. **Louisiana Digest—Damages—Par. 30.**

If in so doing the passenger is injured by some object placed in close proximity to the car by some one to the knowledge of the Railroad Company, both are liable in damages to the passenger.

6. **Louisiana Digest—Municipalities—Par. 258, 265; Railroads—Par. 51.**

In such a case the knowledge by the plaintiff of the presence of those pipes will not defeat his right to damages unless it is established that he was aware that the pipes were in dangerous proximity to the cars.

7. **Louisiana Digest—Negligence—Par. 29.**

A boy sixteen years of age may be guilty of contributory negligence; but he is not to be held to the same degree of care and prudence as an adult.

8. **Louisiana Digest—Damages—Par. 105.**

$25,000 damages allowed for the loss of both legs above the knee.

(Civil Code, Art. 2315. Editor's note.)

Appeal from Civil District Court, Hon. Sam A. LeBlanc, Judge.

This is a damage suit for personal injuries.

Judgment for plaintiff. Defendant appealed.

Judgment amended and affirmed.

Lazarus, Michel & Lazarus, H. S. Weil, attorneys for plaintiff and appellee.

Benj. W. Kernan, W. L. Gleason, attorneys for defendant and appellant.

CLAIBORNE, J. The gravity of the injury suffered by the plaintiff and the very large amount claimed in the petition and allowed in the judgment and the eminence of counsel engaged in the prosecution and defense give this case more than ordinary importance and demand more than ordinary consideration.

The site of the accident was on St. Claude Avenue between Clouet Street, in the direction of uptown, and Louisa Street, in the direction of downtown. The

block is 529 feet long from Clouet to Louisa. The Avenue is 127' 8" wide, with a neutral ground in the centre 61' 6" wide, with an uptown roadway on the lake side of it and a downtown roadway on the river side of it, each 20' wide 21' 10" from the neutral ground curbing on the lake side and upon the neutral ground are the tracks of the Louisiana Southern Railway; 8' 4" from those tracks are the upbound tracks of the New Orleans Public Service; 9' 4" from those tracks are the downtown tracks of the same Public Service; and 7' 10½" from the river side rail of those tracks is the river side curb of the neutral ground.

At the time of the accident the Sewerage and Water Board had a locomotive crane on the lake side roadway of St. Claude Avenue running over a temporary track laid there which occupied about twenty feet of the roadway; they were excavating a trench on the neutral ground the centre of which was 44 feet from the lake side property line of St. Claude Avenue, and six feet from the edge of the neutral ground curbing; the trench was eight feet wide and nine feet deep, and the material excavated from the trench was dumped between the track and the lake side sidewalk; the street and part of the sidewalk were blocked to general traffic.

The pipes to be laid into the trench had been deposited by the Sewerage and Water Board upon the 7' 10½" vacant space on the river side of the neutral ground between the downtown track of the Public Service cars and the river side curb of the neutral ground. These pipes were of concrete, oval in shape, measuring outside, 44 inches high, about two feet three inches above the platform of the car, 48 inches wide and 8 feet 4 inches long. They were laid at a slight angle from the track and across the curbing; they lay at a distance varying from four and a half inches to seven inches from the body of the car and extended about three feet beyond the curbing. The first pipe lay 130 feet from Clouet Street, and the last pipe 150 feet from Louisa Street. The pipes themselves extended over a distance of about 250 feet along the track, and were as near to each other as the bell ends would permit. Each pipe weighed from 5000 to 5700 pounds. In the language of plaintiffs' attorney they were "huge immense affairs". It took six men to roll one, and a derrick to lift it. The pipes had been placed temporarily in that place by the Sewerage and Water Board preparatory to their use in the trench, as the only available vacant space. As stated by the Engineer of the Board in charge of the construction of the Canal, as the most convenient and least dangerous place and most accessible.

The plaintiff through his tutor alleged that on March 30, 1923, he was sixteen years, four and one-half months of age; that on said date at about four-fifteen o'clock in the afternoon at some point uptown he boarded one of the cars of the New Orleans Public Service Co. as a passenger intending to return to his home, 1836 Louisa Street, and took a seat in said car; that the route of said car was down St. Claude Avenue to the intersection of Louisa Street; that as said car approached Louisa Street the plaintiff, intending to leave the car at the corner of St. Claude and Louisa Street, made his exit from the car through the front door; that the car was of an old type not equipped with vestibule doors which may be easily opened and closed by the motorman or conductor; that the car was equipped with vestibule doors of such a type that it required an effort to open or close them, and as a consequence they were often left open when they should have been closed; that when the plaintiff approached the front platform with the intention of leaving the car at the next corner, which was St. Claude and

Louisa Streets, he found the front vestibule door in the right hand open; that he construed this as an invitation to leave the car by the front right hand door, and preparing to disembark from said car at the next corner, the plaintiff stepped from the platform to the step of the car; that at that time the car was moving at a moderate speed either because it had stopped at the previous corner of Clouet, or because it was preparing to stop at the next corner of Louisa Street; that when plaintiff stepped upon the platform and from there to the step of the car, he was not warned by the motorman who saw him or should have seen him, of any danger of getting upon the step; that in stepping from the platform to the step he was doing only what other passengers have done from time immemorial, to the knowledge of the Public Service Company and its employees, with the acquiescence of said Company; that when plaintiff stepped on the step he was holding onto the handle bar put there for that purpose and would have been able to stand there in perfect safety at the moderate speed at which said car was moving except for the following occurrence; that when he stepped on the step, he was violently struck by the large concrete pipes placed alongside of the track, and the blow coming upon him suddenly and unexpectedly caused him to loosen his hold and lose his balance, and before he could regain his balance he was struck by other pipes and knocked from the step of said car under the car; that the rear wheel of said car passed over both of his legs, crushing them so that when he was taken to the Charity Hospital it was found necessary to amputate both of his legs midway of the thigh; that said accident was due to the gross negligence of both defendants in the following particulars:

1st. It was negligence of the Sewerage and Water Board to have placed said pipes in such close proximity to the tracks to the Public Service so as to allow a clearance of only a few inches between the pipes and the cars; that the said Board knew or should have known that passengers on said cars might at times be upon the steps of said cars under the same circumstances as plaintiff or under other circumstances such as the crowding of the cars which often makes it necessary for several passengers to ride on the steps; that said pipes should have been laid in some other way and in some other place so as not to endanger the lives and limbs of passengers on the cars; that except for the presence of said pipes in such close proximity to the cars plaintiff would have been carried safely to his destination; that said pipes were laid by the Sewerage and Water Board at the place above mentioned with the full knowledge of the Public Service Company and without protest; that it was the duty of said Company to have caused said pipes to be placed in such a position as would not have endangered the lives or limbs of passengers on said cars; 2nd, that the Public Service owed a duty to the plaintiff to warn him of said danger and to use every possible care to avoid the accident which occurred; 3rd, that the Public Service Company was guilty of gross negligence in allowing the vestibule door to remain open while the car was in motion, so that passengers could go upon the step of the car preparatory to leaving under the above circumstances, and in not warning the plaintiff of the danger of stepping upon the step; 4th, that the Public Service Co. was grossly negligent in operating a car of the obsolete type of the one upon which plaintiff was a passenger, and in not having said car equipped with the improved device for the opening and closing of the vestibule door which caused the door to have been open when it should have been closed; 5th, that said Public Service was grossly negligent in not hav-

ing its cars equipped with brakes in such condition that the car could be stopped instantly when running at moderate speed; 6th, that either because the motorman was incompetent or negligent, or because the brakes were defective he did not stop the car when he saw or should have seen the plaintiff struck, and as a consequence the plaintiff was run over; that at the time when the plaintiff stepped from the platform to the step he was not aware of the presence of said pipes or of the dangerous proximity of the pipes to the car.

For pain, mental anguish, inability to earn a livelihood, or enjoy the pleasures of life, plaintiff claims $50,000 damages.

For answer, the Public Service Company admitted that it was running the cars on St. Claude Street; that the Sewerage Board had placed the pipes on the neutral ground as alleged, but denied all the other allegations of the petition.

It specially averred that the clearance between the pipes and the body of the cars running on the adjacent track was sufficient for the safety of passengers riding on the cars and exercising care so as to refrain from protruding any portion of their body from the car. It alleged that the plaintiff was aware of the conditions existing on St. Claude Street and of the location of the pipes. Lastly, it alleged that the injuries suffered by plaintiff were caused by his own negligent conduct in getting upon the step in the manner he did and in causing his body to protrude beyond the limits of the car.

The Sewerage and Water Board denied the allegations of the petition and charged the plaintiff with contributory negligence because plaintiff lived in the neighborhood a long time and was fully aware of the conditions prevailing; because the pipes were so placed as to leave one hundred and fifty feet from the usual stopping place of the cars; because plaintiff extended his body beyond the line of the steps at a distance so far from the stopping place.

There was a verdict and judgment in favor of plaintiff and against both defendants for $37,000.00.

A new trial was refused and both defendants have appealed.

The plaintiff charges the defendants with negligence in several particulars.

The duty of the carrier towards its passengers is thus defined in our jurisprudence.

In 1855 in Black vs. Carrollton R. R., 10 La. Ann. 38, the court said:

"It is, moreover, an implied condition of their contract with each passenger that the latter shall not be put in jeopardy of life, or limb, by any fault, even the slightest, of the servants of the Company."

While our Code Art. 3556, S. 13, defines the "very slight" or slightest fault, as one "which is excusable, and from which no responsibility is incurred", yet the jurisprudence makes an exception against the carrier and holds him liable even for the "slightest" fault.

In the case of Le Blanc vs. Sweet, 107 La. 355, 31 South. 766, the court said on page 368:

"Reduced to the simplest form, the rule may be stated to be that the carrier is bound to exercise the strictest diligence, in receiving a passenger, in conveying him to his destination, and in setting him down safely, that the means of conveyance employed and the circumstances of the case will permit", quoting numerous authorities.

This case was affirmed in Hopkins vs. N. O. Ry., 150 La. 61 (72), 90 South. 512; see 10 C. J. 854, S. 1294.

In the case of Clerc vs. R. R., 107 La. 370, 31 South. 886, the court affirmed Black vs. Carrollton Rd., 10 La. Ann. 38, and said on p. 375:

"We think it is very generally recognized that for the safety of their passengers, common carriers are required to exercise the

highest degree of care reasonably to be expected from human vigilance and foresight, in view of the mode and character of the conveyance adopted and consistent with the practical prosecution of their business."

In Hamilton vs. Ry., 147 La. 616 (622), 85 South. 611, the court said:

"Defendant's obligations, as a carrier, required that it shall carry its passengers safely, unless prevented by some act of God or *vis major* of man, and shall provide them with a safe place of exit". Quoting numerous authorities.

In Hopkins vs. N. O. Ry., 150 La. 72, 90 South. 512, the court adopted the language in Patton vs. Pickles, 50 La. Ann. 864, 24 South. 290, referring to the relations between a common carrier and its passengers, quoting:

"The contract between the parties is one which from time immemorial has imposed upon the obligor exceptionally severe obligations. Safe carriage is not merely an incident of the contract, but it is its very direct object."

Negligence, under the circumstances of this case, was the failure to use such care and precautions as were necessary to avoid the danger which could and should have been anticipated by reason of which the plaintiff suffered his injury. Callier vs. N. O. Ry and Lt. Co., No. 8126 Ct. App. 21; A. and E. Enc. Law, p. 458; 95 U. S. 439-441.

In Hanson vs. Mansfield Ry. & Transportation Co., 38 La. Ann. 117, the court said:

"Negligence, in its common acceptation, is held to be the doing of something that a reasonable and prudent person would ordinarily not have done under the circumstances of the situation, or the omission to do something which a person of like character would have done under the circumstances of the case."

This opinion was adopted in R. R. vs. Lumber Co., 49 La. Ann. 1184, 22 South. 675, on page 1197, the court said:

"The Supreme Court of the United States in R. R. vs. U. S., 95 U. S. 441, gave the terms substantially the same definition, adding 'that the duty was dictated and measured by the exigencies of the situation.'"

In the case under consideration danger to passengers alighting from the cars or merely standing upon the steps of the car at any point ahead of the pipes or along the pipes should have suggested itself forcibly to any persons of ordinary prudence. The distance between the car itself and the pipes was not at any point greater than seven inches, and evidently insufficient as a clearance for human limbs or body.

The evidence is that the plaintiff was seated about the middle of the car; when the car reached the corner of Clouet and St. Claude Avenue, it slowed up on the downtown side to allow a policeman to alight. This brought the front part of the car about 40 feet below Clouet Street, and 90 feet from the first pipe upon the ground.

In the language of the plaintiff:

"When it hit Clouet Street a policeman got off. After the policeman got off the car started again and I walked to the platform and said: 'Next corner' to the conductor, 'please'; and he said 'yes', and when I stepped off, I got hurt."

Q. What do you mean by stepping off?
A. Stepping off the platform in the car.

Q. You stepped off the car from the platform?
A. Off the platform to the step.

Q. What were you stepping off the platform to the step for?
A. I was going to get off the car at the corner.

Q. What corner?
A. Louisa Street.

Fred Laque, motorman at the time of the accident, acknowledged that the plaintiff on coming upon the platform said to him: "Corner, cap". The motorman testifies that he answered the plaintiff and said to him: "Look out, boy". The plaintiff denies this. Perhaps he did not hear it. The motorman adds: "Just when he was stepping on the step and the pipe struck him and down he went, I didn't have time to do anything".

The evidence satisfies us that the plaintiff walked to the platform and descended upon the steps before the car had reached the first pipe. This conclusion confirms his testimony that when he got upon the steps he did not see the pipes until he was struck by them. It would be inconceivable that he should have walked down the steps at the time they reached the pipes. He would then have seen them, and, seeing them, he would have avoided them. We are confirmed in that conclusion by plaintiff's testimony:

Q. How long were you on the step of the car before you were hit?
A. Just as soon as I got on it, I was hit.
Q. Just as soon as you stepped from the platform to the step you were hit?
A. Yes, sir.
Q. Do you know whether you were hit with more than one thing?
A. I was hit a couple of times and dragged to the back of the car. I could not say how many (pipes) hit me, but I know I was dragged to the back of the car.

The evidence is that when the plaintiff was picked up after the accident, he was seated on the ground with his back against one of the pipes, either the fourth, fifth, or sixth. It was quite natural that he should have been dragged, and being dragged, that he should have been found some distance from the first pipe.

It is gross negligence on the part of a railroad company to leave objects in such close proximity to their cars from which danger may be anticipated. 10 C. J. 871, S. 1385.

In Kird vs. Ry., 109 La. 525, 33 South. 587, the court said:

"To have its freight platform constructed so near to its track that the elbow of a passenger may come in contact with freight on the platform as the passenger is seated inside of a passenger car, with his elbow resting for comfort on the sill of one of the windows of the car and protruding but slightly, is gross negligence on the part of a railway company rendering it responsible in damages to a passenger injured under the above circumstances." Affirming Clerc vs. Morgan R. R., 107 La. 370, 31 South. 886.

In the late case the court on p. 377 quoted with approval the following language in Summers vs. R. R., 34 La. Ann. 145:

"It was bound to know that its passengers, in common with those on other street railways, were in the habit of riding with their arms resting on the window sills and projecting outside of the cars; * * * knowing these things, a reasonable care for the safety of others would have dictated the duty of using precautions to avoid the danger."

10 C. J. 1139, S. 1510:

"It is the prevailing rule that it is negligence per se for a passenger on a railroad voluntarily or inadvertently to protrude his arm, hand, elbow, or any other part of his body through the window of a moving car beyond the outer edge of the window or outer surface of the car, so as to come in contact with objects or obstacles near the track." Samuel E. Moore vs Edison Electric Illuminating Co., 43 La Ann. 792, 9 South. 433.

But it is not negligence when the passenger does so for a legitimate useful purpose or in accordance with a recognized custom. Summers, 34 La. Ann. 145; Clerc vs. Morgan R. R., 107 La. 370, 31 South. 886.

In the present case the plaintiff cannot be charged with negligence for having de-

scended upon the steps prior to alighting. The evidence, as well as our own observation, establishes that it is a customary practice for persons riding in the street cars of this City to get down upon the step and stand upon it for some distance before getting off of the car; this is more especially the case with young and active passengers.

The practice is so common that no one can be ignorant of it. 10 C. J. 1120, S. 1497.

But it is argued that under the conditions of this case it was negligence on the part of the plaintiff for two reasons. In the first place, he was aware of the presence of those tiles. For a week prior to the accident nearly every morning he took the cars going uptown to work at the corner of St. Claude Avenue and Louisa Street. He saw the pipes lying in their huge imposing proportions upon the ground near the car track. During the same week nearly every evening returning home from work he rode upon the same cars and passed along the same pipes and saw them again before he reached Louisa or Desire Street where he got off. But whether standing at the corner of Louisa and St. Claude waiting for the car, 150 feet from the pipes, or whether inside of the car, he looked at the pipes only from a distance.

When inside of the car returning home he may again have seen the pipes. But on neither occasion has it been established that he was in a position to know or did know, that the distance between the car and the pipes was so small that it would not permit the passage of the human body.

In the case of Georgia Southern Ry. vs. Cartledge, 42 S. E. 405 (Ga.), the plaintiff was injured by a grab or catch bar used in delivering mail from a railroad car. The court said:

"He had seen the semaphore post frequently, but had never taken any particular notice of how close it was. * * * In view of this evidence it may be conceded not only that the railway company was negligent as alleged, but that the plaintiff, though he had frequently seen the post, was not himself guilty of any negligence in not taking note of its dangerous proximity to the track, and governed his actions accordingly." 80 S. W. 324.

In the case of Gusman vs. Caffery, 49 La. Ann. 1264, 22 South. 742, the plaintiff was injured by a cross beam erected over a railroad track too low to permit a brakeman standing erect to pass beneath without stooping. The plaintiff was employed by the defendant and was fully aware of the existence of the cross beam. The defendants pleaded assumption of risk on the part of the plaintiff, he having knowledge of the height of said beam and its position. The District Court maintained an exception of no cause of action. The Supreme Court reversed the judgment and said:

"It is not true that the mere fact of such knowledge carries with it necessarily and on all occasions, and under all circumstances, the cutting off of remedy for injuries received by him from such constructions."

Again the plaintiff is charged with negligence because he got upon the platform and descended upon the steps too soon after the car had passed the corner of Clouet, and too long before the car reached the corner of Louisa Street. It was within the same block, it was done by a young and impetuous boy. It is not for this court to measure the distance in feet within which it will be prudent for a passenger to get upon the steps of the car from which he is about to alight, and the number without which it will be imprudent. The plaintiff had no reason to apprehend any

danger by getting upon the steps at the time he did. But he notified the motorman of his intention to get out of the car. If there had been any danger at the time the motorman should have guarded him against it.

No precautions of any kind were taken in that direction.

In Gates vs. Ry., 141 La. 946, 75 South. 1002, the court said:

"A street railway company is liable in damages for personal injuries suffered by a passenger, while alighting from the car in an ordinary prudent manner, coming in contact with an obstruction placed near the track by the employees of the railway company, of which the passenger was not warned by the conductor of the car." Lever ett vs. Shreveport Belt Ry. Co., 110 La. 399, 34 South. 579.

The plaintiff was a boy sixteen years old at the time of the accident.

He could be charged with contributory negligence. But he could not be expected to possess the same degree of prescience, caution and intelligence of an adult, nor could he be judged by the same rigor of law applicable to the latter.

In the case of Mitchell vs. R. R., 110 La. 630, 34 South. 714, the court said:

"A boy of twelve years of age may be guilty of contributory negligence which bars his recovery. No doubt of that. But a boy of that age is not to be held to the same degree of care, prudence and circumspection which would be the case with an older person."

The court cites following cases:

In McGovern vs. R. R., 67 N. Y. 421, it was said: "In respect to contributory negligence on the part of the boy, it is claimed that the evidence shows he did not look, before stepping upon the track, to the west, and that if he had done so, he would have seen the engine, and the accident would not have happened. The rule which requires persons before crossing a railroad track to look to see whether trains are approaching, and that if they omit to do so and are injured by a collision, which, if they looked, would have been avoided, are to be deemed guilty of negligence, is not to be applied inflexibly, and in all cases, without regard to age and circumstances."

The law is not so unreasonable as to expect or require the same maturity of judgment, or the same degree of care and circumspection in a child of tender years as in an adult.

In Railroad vs. Young, 10 S. E. 197 (Ga.), it was held that due care according to its age and capacity is all that can be expected of a child of tender years. While a boy of twelve is not to be regarded as "of tender years", still he is not to be held to the same accountability in the matter of contributory negligence as a full grown person is. Westerfield vs. Levis Bros., 43 La. Ann. 63, 9 South. 52; 10 C. J. 1009, S. 1483. Having held the defendants negligent in the manner of laying the pipes, there is no necessity of considering the other charges of negligence.

The jury decided the questions of fact in favor of the plaintiff and the judge approved them and refused a new trial on the questions of law. We cannot say that their judgment was erroneous.

But we think the damages allowed are excessive. They are without precedent in this State. In the case of Nelson vs. R. R., 49 La. Ann. 491, 21 South. 635, a child two years old lost both legs. The jury awarded $30,000. The Supreme Court reduced the judgment to $20,000. The court said:

"In Ketchum vs. R. R., 38 La. Ann. 778 for the loss of an arm this court allowed $10,000 damages. In Peniston vs. R. R., 34 La. Ann. 777, for a broken leg $6000. In Barksdull vs. R. R., 23 La. Ann. 180, for both legs $15,000. In other cases of injuries far inferior in character, allowances have

ranged from $1,500 to $7,500. In Chopin vs. R. R., 17 La. Ann. 19, $25,000 was allowed for the loss of a leg. In the Federal courts for an injured foot, $7500 was allowed; $10,000 in another case was awarded for the loss of a leg, and in another case $20,000 was allowed for the loss of both legs. Ry. Co. vs. Stout, 17 Wall. 657; R. R. Co. vs. Mares, 123 U. S. 710; R. R. Co. vs. Herbert, 116 U. S. 642.''

In the case of Leininger vs. R. R., 150 La. 1089, 91 South. 521, where the plaintiff lost both legs the Supreme Court allowed the plaintiff $25,000.

Although there is no fixed rule for estimating damages some similarity must exist. Rice vs. Crescent City R. R. Co., 51 La. Ann. 108, 24 South. 791; McMahon vs. New Orleans Ry. & Light Co., 127 La. 544, 53 South. 857.

It is therefore ordered that the judgment herein be reduced from Thirty-seven Thousand Dollars to Twenty-five Thousand Dollars, and as thus amended that it be affirmed, the defendants to pay costs in both courts.

## CONCURRING OPINION OF JUDGE WILLIAM W. WESTERFIELD.

WESTERFIELD, J. The unfortunate condition of the plaintiff in this case is in my opinion solely attributable to the fault of defendant herein. As a carrier of passengers the law imposes the duty upon this defendant of exercising the highest degree of care for the safety of its passengers, as stated by our Supreme Court, "the highest degre of care reasonable to be expected from human vigilance and foresight". Notwithstanding this great responsibility, the employees of the street railway company in this case took no precaution, exercised no care and made no effort to prevent injury to its passengers as a result of the dangerous proximity of the enormous con-

crete conduits to its tracks and cars. The car was equipped with doors which should have been closed, certainly during the short interval required to pass the conduits. The car could have been slowed down to a snail's pace while passing the dangerous block. A re-routing of the cars on this line was quite possible so as to escape the conduits altogether. Passengers could have been warned of the danger. The habit of geting on the steps preparatory to alighting shown to have been indulged in by passengers could have been interrupted for the single block in which the conduits were placed. Counsel for this defendant frankly admits negligence, as well he might, for it is as plain as a pike staff. But it is said the plaintiff was also negligent and his negligence the proximate cause of the accident. He saw or should have seen the conduits. He knew or should have known of the danger involved in getting on the steps under the circumstances. Plaintiff says he didn't see the conduits when getting off the platform and on the step. He admits having seen them on another day of the week they were lying there. It is true that in getting off the platform he faced the conduits and that if he looked ahead of him while on the platform he might have seen them. But he says he didn't look ahead and it was not his duty to do so. Such view of the conduits as was afforded him in stepping from the platform was instantaneous and wholly insufficient to make any impression on his consciousness. If he had seen the conduits in time as alleged he could not judge of their proximity to the step for, as was said by Chief Justice Monroe in Hamilton vs. La. Ry. and Nav. Co., 147 La. 616, 85 South. 611: "It is well recognized in optics that the art of measuring distances by sight is largely an acquired one, and it is a matter within the common experience that in many instances where the distances are

short and one has nothing by which to measure it is difficult, if not impossible, to determine the distance of an object within the range of one's vision." But he did not see them, at least had no consciousness of their existence, and the doctrine that one must be held to have seen what he could have seen has no application here.

The eye in its relation to human consciousness or understanding is analogous to the photographic lens and sensitized plate of the camera, but there is this difference: In the case of the camera, given light and proper exposure the lens faithfully and accurately reproduces upon the plate all objects within range. But the eye, and in a lesser degree the other senses, depend upon the exercise of the intellectual faculty of attention for proper functioning. We see objects and we read sentences, paragraphs and even pages with little or no consciousness of what we see, depending upon the degree of attention exercised. The first command given the soldier has no relation to the manual of arms, but the drill master shouts "attention" in recognition of the fact that attention is the beginning of consciousness. It is not sufficient that objects be within the scope of our senses. There must be conception, understanding, knowledge. The plaintiff in this case must have had knowledge of the danger before he can be said to be negligent in disregarding the precepts of ordinary care. In the words of the famous German philosopher, "perceptions without conceptions are blind". Sensory perceptions form "the warp of experience across which the shuttle of thought throws its woof and constructs its web of knowledge".

When through constant repetition of sensory experience we learn to associate certain objects with certain surroundings and conditions the mind gradually accepts the relation as fixed and turns its attention to other considerations of greater novelty. Familiar situations are met by subconscious action. When, therefore, the conduits appeared within the range of plaintiff's vision there was no consciousness of their presence because he had a fixed impression of the neutral ground as free from obstruction and of the street railway as being safely and carefully operated. His attention was not arrested because the time during which the objects were within the range of his vision was not sufficient to overcome the mental inertia caused by previous mental experience constantly repeated. His action in stepping from the platform was therefore subconscious.