(91 South. 521)

No. 24611.

## LEININGER v. NEW ORLEANS RY. & LIGHT CO.

(March 20, 1922. Rehearing Denied May 1, 1922.)

*(Syllabus by Editorial Staff.)*

1. **Street railroads** ⬥⟾114(10)—**Evidence held to show unlawful speed.**

In an action for injuries to a person struck by a street car, evidence *held* to show that the car was exceeding the speed limit of 15 miles an hour fixed by municipal ordinance.

2. **Witnesses** ⬥⟾397—**Previous statements of witnesses used for impeachment not substantive proof.**

While statements signed by witnesses previous to the trial might serve to discredit their testimony at the trial, they do not prove the truth of the statements made therein.

150 LA.—35

3. **Street railroads** ⬥⟾98(9)—**Failure to see car held not contributory negligence.**

The failure of one struck by a street car while on a crossing to see or hear the car approaching was not contributory negligence where traffic was abnormally congested, and such failure was due to the confusion of noise and lights of many automobiles.

4. **Damages** ⬥⟾132(9) — **$25,000 for loss of both legs not excessive.**

Where plaintiff was knocked down and run over by a street car, and his legs so mangled that they had to be amputated below the knees, a judgment for $25,000 was not excessive.

Appeal from Civil District Court, Parish of Orleans; Fred D. King, Judge.

Action by Jacob R. Leininger against the New Orleans Railway & Light Company. From a judgment for plaintiff, defendant appeals. Affirmed.

Dart, Kernan & Dart, of New Orleans, for appellant.

E. M. Stafford and H. W. Robinson, both of New Orleans, for appellee.

By Division B, composed of Justices O'NIELL, LAND, and BAKER.

O'NIELL, J. Defendant has appealed from a verdict and judgment allowing plaintiff $25,000 damages for personal injuries. He was knocked down and run over by a street car, mangling his legs so that they had to be amputated below the knees.

The case presents only questions of fact. The accident occurred at night, near 10 o'clock, at the intersection of St. Charles avenue and St. Andrew street, in New Orleans. Plaintiff and 10 other men, having attended a political meeting, were walking along the uptown side of St. Andrew street from the direction of the river. When they came to St. Charles avenue, there was an abnormal congestion of automobile traffic, because the driveway on the river side of the neutral ground in the avenue for a distance of several blocks below St. Andrew street was being repaired and was closed against automo-

bile traffic coming down the avenue. A traffic officer was stationed there, directing the drivers of automobiles either to turn to the right and go to Prytania street, or turn to the left and go across St. Charles avenue to Carondelet street. Plaintiff and the other members of his party were walking in pairs or trios, a few steps apart. He and Mr. Hugh Exnicios were walking together. Two other members of the party were close in front of them. Plaintiff and Mr. Exnicios testified that, when they had crossed the first driveway on the avenue and were on the neutral ground, they looked up the car track to see whether a street car was coming down; seeing none, they looked down the other track to see whether a car was coming uptown. Neither of them saw the car approaching. They were then walking leisurely across the tracks on the neutral ground, two members of their party being in front of them and seven following them. Just as plaintiff had crossed the last rail of the two tracks he was struck by the car going uptown.

Plaintiff avers that there was negligence on the part of defendant's employees in several respects, viz.: (1) That the speed of the car was excessive, being about 25 miles an hour, in violation of a municipal ordinance fixing the speed limit at 15 miles an hour; (2) that the motorman was guilty of negligence in not having his car under control, particularly while approaching a crossing where traffic was abnormally congested; (3) that the motorman failed to sound his gong when he approached the crossing; and (4) that the brakes on the car were defective.

Defendant denied all of the allegations of negligence, admitting, however, that the speed limit fixed by municipal ordinance was 15 miles an hour. Defendant charged that the accident was caused by plaintiff's negligence, averring that, after he had crossed the track, he stopped and suddenly stepped backward, so close in front of the car that it was impossible for the motorman to avoid striking him.

[1] The evidence leaves no doubt in our mind that the car was exceeding the speed limit; that it was going 20 or 25 miles an hour, which, the record shows, was top speed for a car of that type. Ten witnesses testified to the high speed of the car. The motorman and conductor and one of the two passengers who were on the car denied that the speed was excessive. Two men testified that they were riding uptown in an automobile at the time and scene of the accident, that they were traveling 18 to 20 miles an hour, and that the street car overtook and passed them immediately before the accident, in the block next below St. Andrew street. The testimony regarding the high speed of the car is corroborated by the fact that Mr. Leininger was thrown 12 feet by the impact, and by the fact that, notwithstanding the brakes were applied before the collision occurred, the car went 80 or 90 feet beyond St. Andrew street.

The brakes on the car were in good condition and were as efficient as such appliances should or could have been. They had been tested that day, before the accident, and were subjected to several tests immediately afterwards to determine whether there was any fault in them. The motorman testified that the brakes were in bad condition, and that, if they had been working right, he could have stopped his car in time to avoid the accident. He testified that he had, on his last previous trip to the car barn, complained of the brakes and had asked for another car. The testimony was successfully contradicted, and defendant's counsel concede that it was false. Manifestly this false testimony was inspired by either an instinct or a motive on the part of the motorman to shift the blame from his shoulders and put it on the brakes. He drove the car too fast and neglected to keep a proper lookout while approaching a crossing where traffic was ab-

normally congested. He admitted that he was aware of the condition at the crossing, because he had made the trip that day, perhaps more than once. He testified that he did not see the man on the track until he was within 5 feet from him, and that he, the motorman, was then "fighting" the brakes, and holloed at the man. We do not understand why he did not see the man sooner, especially when there was a gang of 11 men crossing the tracks at a regular crossing. The motorman was grossly negligent in failing to have his car under control in such circumstances. That is virtually admitted by his false attempt to put the blame upon the brakes. There is a preponderance of evidence, too, that the motorman was not sounding his gong when he approached the crossing. There is substantially the same preponderance of evidence in that respect that there is with regard to the excessive speed of the car.

[2, 3] There is no proof of the charge made in defendant's answer that Mr. Leininger, after crossing the track, stepped backwards in front of the car. The motorman signed a statement to that effect, prepared for the railway company, on the next day after the accident; but he denied it when called as a witness at the trial. The traffic policeman also signed a statement, prepared for the railway company, on the same day, saying that the accident was caused by Mr. Leininger's hesitating and getting confused while crossing the track. But the policeman also denied the statement when he was called as a witness at the trial. These previous statements of the two witnesses are in the record, annexed to bills of exception taken to the court's rulings sustaining an objection to defendant's attorney's interrogating the witnesses with regard to the statements. They may serve to discredit the testimony given by the witnesses at the trial, but do not prove the truth of the statements made when the witnesses were not under oath or subject to cross-examination. The failure of Mr. Leininger and Mr. Exnicios to see or hear the car approaching is explained by the confusion of noise and lights of so many automobiles traveling up St. Charles avenue at the time. There was no contributory negligence on plaintiff's part, under the circumstances.

[4] The amount of the judgment is in accord with the jurisprudence on the subject.

The judgment is affirmed at appellant's cost.

Rehearing refused by Division C, composed of Justices DAWKINS, ST. PAUL, and THOMPSON.