McBRIDE, Judge.
Plaintiff, an alleged injured workman, recovered judgment against his employer for workmen’s compensation for total disability at the rate of $35 per week for 29 weeks, plus' reimbursement for medical expenses, the said judgment also allowing plaintiff’s attorneys (as against defendant) a fee of 20% of the amount of the award under LSA-R.S. 23:1201.2, as amended. Defendant appealed.
Appellant contends that not only did plaintiff fail to prove the happening of an occupational accident by a preponderance of evidence, but that he has presented a case totally unworthy of any favorable consideration. It is argued to us that the credibility of Preston, plaintiff’s co-worker and chief witness, who purportedly saw the accident, was impeached to the point of rendering him completely unworthy of belief. Appellant also argues that plaintiff’s own testimony concerning the occurrence of the alleged accident is effectively refuted, and that his actions on and shortly after the date thereof belie its occurrence.
On April 7, 1959, plaintiff was in the employ of defendant as a laborer. On that date, he and his co-worker, Preston, were engaged in their normal duties which consisted of lifting sacks containing coffee onto a scale. Throughout the day plaintiff worked at a distance of about one foot away from Preston, and the weight clerk, Lambert, was about three or four feet removed from plaintiff. These three parties worked together the entire morning, and after the lunch period resumed work. About 3:55 o’clock that afternoon plaintiff told Lambert, who was also his supervisor, that he was tired and “I ain’t going to weigh no more coffee this evening.” After some discussion between plaintiff and Lambert concerning his refusal to work, plaintiff was fired.
The following day, April 8, plaintiff reported to work, but was reminded that he had been discharged. Plaintiff then reported the fact of his firing to McDonald, the union job steward. McDonald states that when he asked the reason for his discharge, plaintiff stated that “around about 4:30 in the evening Mr. Gene Lambert came to him and told him he had 60 more bags to handle, and he told Mr. Lambert he was tired * * Later that same day plaintiff *476 visited the office of the union and informed the business agent, Born, he had been discharged. Born testified that when “I questioned him, I said, Abe, why did you walk off the job, and he said, I was tired and I went home, so I said, well, you know when you walk off a job you actually quit your job, * *
Up to this point plaintiff mentioned nothing whatever about having met with an accident. He gave no notice of an accident or injury to his supervisor, his union job steward, who was there to adjust grievances of the employees, or to his union business agent, whose duty it was to protect his interests.
On April 9, two days after the alleged date of the accident, plaintiff called at defendant’s warehouse and requested that he be sent to a doctor, stating that he had been hurt on April 7 while on his job. Later that same day he returned to the union hall and told Born “he had hurt himself.” Born testified plaintiff thus changed his story, and stated he went home on April 7 because he had “hurt himself.” According to Born, plaintiff did not say how he was injured, and further he admitted to Born that he had not made an accident report to his superior.
Now we come to the testimony adduced on behalf of plaintiff regarding his accident. Plaintiff testified that on the morning of April 7 he was working with Preston and his supervisor, Lambert, and during the course of the work, he and Preston pulled a sack of coffee which had become caught by a nail in the pallet, and the bag became dislodged and' fell causing the two to lose balance. Plaintiff did not fall but twisted his back and he says he felt a “little funny tickling up and down my back right then * if if”
Plaintiff continued working thoughout chat morning, and he states that at lunch time he told Preston “I was getting sorer and sorer. * * * and I showed him where the bag had skint my knee at that time, and I said ‘It is beginning to sting me.’ ”
After lunch, plaintiff took up his usual duties and remained on the job until about 3:55, at which time he claims he told Lambert that he was “beginning to feel that soreness and hurting,” and that “I am not able to finish, because I am sore * * It was at this point that Lambert fired plaintiff. Lambert insists that plaintiff did not mention anything about an accident or injury, but merely said he was tired and wanted to leave.
Preston testified that he remembered that in the morning a sack of coffee was pulled loose from a nail which caused plaintiff and himself to bend over. Preston’s testimony indicates he did not see the bag strike plaintiff although he was only one foot away, and he learned of an accident at lunch time when plaintiff complained of a skinned knee. Preston testified as a witness about eight months after the incident.
Plowever, seven months before the trial Preston made a statement to an adjuster in the presence of three witnesses, which was reduced to writing and signed by Preston, the gist of which is that on the day in question (April 7) he did not see anything unusual happen, but that he did hear plaintiff say about 4 o’clock that he was quitting work early. Preston’s statement further recites that he rode in a truck sitting next to plaintiff both before and after lunch, and that plaintiff said nothing about his back or about an accident.
We have carefully read, analyzed, and weighed the testimony, and we reach the conclusion that plaintiff did not meet with an accident or sustain an injury on the date in question. His claim he sustained an injury appears to be but an afterthought prompted by his dismissal from the job. It seems inconceivable to us that plaintiff would have told his supervisor that he was leaving the job because of fatigue if he had actually been hurt and was quitting for that reason. Lambert fired plaintiff. If plaintiff had told Lambert that he had been injured, Lambert would not have fired him but would have ordered that he see the company *477 doctor. Nor can it be overlooked that McDonald, the union steward, and Born, the union business agent, were charged with protecting the interests of the members of the union, and one could hardly believe they would have testified falsely against plaintiff.
Now turning to Preston. This man is a friend of plaintiff and worked with him for a considerable period of time. We cannot understand why Preston would have made a statement adverse to plaintiff within a month of the date of the alleged occurrence if the recitals therein were not true. Preston knew at the time of making the statement that plaintiff was claiming he had been injured in an accident on April 7. He was apprised of that fact during the conversation which preceded the making of the statement. Yet he stated emphatically that he did not see an accident and that plaintiff never told him about having been injured.
Under established jurisprudence prevailing in this state, sworn declarations of witnesses upon the stand should prevail over unsworn statements which contradict their testimony. This is the general rule. Leininger v. New Orleans Ry. & Light Co., 150 La. 1089, 91 So. 521; Passera v. United States Guarantee Co., La.App., 187 So. 345; Sentell v. Warmsley, La.App., 157 So. 152; Galt v. Travelers’ Ins. Co., La.App., 141 So. 105; Delcourt v. Bernard, 18 La.App. 616, 136 So. 909. But there may be instances, such as prevail in the instant case, where the prior unsworn statements must be regarded as a conclusive impeachment of the testimony given in open court. This was recognized in Galt v. Travelers’ Ins. Co., supra, where it was said:
“From the foregoing authorities it appears to us that a sworn or written statement given and signed by a witness or a litigant, which statement contradicts the testimony which he subsequently gives in open court, is not accepted by the courts as conclusively impeaching his testimony, and that the courts will look to the facts and circumstances and the evidence in each particular case to determine whether or not greater weight and credence will be given to the written statement, or the testimony given in open court.”
See, also, Galiano v. Ocean Accident & Guarantee Corporation, Ltd., La.App., 55 So.2d 641; Bartholomew v. Impastato, La. App., 12 So.2d 700.
In the light of the surrounding circumstances, we think that the greater weight and credence should be accorded Preston’s written statement rather than to his sworn testimony. Our view is Preston’s testimony is conclusively impeached.
As for plaintiff, his testimony is completely rebutted by the testimony of Lambert, McDonald, and Born.
 The general rule is that the findings of the trial court, especially as to the veracity of witnesses, are entitled to great weight since he had the opportunity to observe the demeanor of all of the witnesses, and that such findings will not be disturbed unless manifestly erroneous. Here the circumstances that weigh against plaintiff are so pronounced, we think there is manifest error in the judgment. The trial consumed two days several weeks apart, and it may be that the trial judge might have overlooked some testimony that would have been more impressive had the case been tried without interval.
There is another feature of the case that must come in for comment. Even if we should leave the record with a feeling that we might possibly have erred in concluding that plaintiff did not meet with an accident, we do not think that the medical testimony produced on his behalf is sufficient to show that any disability resulted directly or indirectly from the alleged accident.
On April 9, which was the first time plaintiff ever complained of an accident or of being injured, he was sent by the employer’s representative to Dr. Richard A. Faust, who examined him on the same day. Dr. Faust found no objective symptoms whatever. *478 However, in view of plaintiff’s complaints of pain, Dr. Faust gave him the benefit of doubt and administered heat therapy on three visits. Dr. Faust then discontinued treatment because plaintiff’s response was such that he did not believe plaintiff had an injury and felt there was no need to have him come to his office for treatment of something which “I couldn’t find.”
Dr. William Fisher, who appeared as plaintiff’s witness, testified that he first saw plaintiff on June 10, 1959, and treated him on 27 different days, finally discharging him on October 28. Dr. Fisher states that at no time during the period of treatment was plaintiff in any physical condition to return to the duties of his employment. Dr. Fisher’s opinion, formulated from subjective symptoms alone, was that plaintiff had sustained an acute injury involving the left latissimus dorsi muscle and left lumbar fascia, which means an injury to the back from the armpit down to the tissue which connects the muscles in the loins. Dr. Fisher’s treatment consisted of physiotherapy, the use of hot baths twice a day, and the use of certain unnamed medications.
Dr. Fisher, on July 10, found a painful mass in plaintiff’s left side which he recommended be removed by surgery, which he, at some unstated time, performed in his office. The mass was diagnosed as a benign-type of tumor made up of fibrous tissue, and Dr. Fisher stated the condition could be attributed to the alleged accident of April 7.
There could have been no causal connection between an accident on April 7 and the tumor. This is a certainty, because Dr. Faust discovered plaintiff had the tumor when he saw him two days after the accident is said to have happened.
Another circumstance unfavorable to plaintiff which is found in Dr. Fisher’s testimony is that the doctor never did say whether or not the 29 weeks of disability resulted from the tumor. ' For all we know the tumor might have been the cause of the inability to work. Plaintiff has not shown anything to the contrary.
Therefore, the judgment appealed from is reversed, and plaintiff’s suit is dismissed at his cost in both courts.
Reversed.