148 So.2d 451 (1963)
Oris and Oliver H. DUANE
v.
TOYE BROS. YELLOW CAB COMPANY et al.
No. 867.
Court of Appeal of Louisiana, Fourth Circuit.
January 7, 1963.
*452 Gemeinhardt, Johannesen & Roberts, Ingard O. Johannesen and Henry J. Roberts, Jr., New Orleans, for plaintiffs-appellants.
Deutsch, Kerrigan & Stiles, Lansing L. Mitchell and Frederick R. Bott, New Orleans, for Toye Bros. Yellow Cab Co., and all persons thereof, defendants-appellees.
Landrieu, Calogero & Kronlage, Pascal F. Calogero, Jr., New Orleans, for Berthney Hingle, defendant-appellee.
Before YARRUT, TURNER, and RAINOLD, JJ.
YARRUT, Judge.
This suit was brought by Plaintiffs (husband and wife) jointly against Defendant-Taxicab Company and Co-defendant Hingle, to recover property and personal injury damages suffered by the wife and the community, resulting from an intersectional collision between a taxicab owned by Defendant-Taxicab Company, and a private passenger automobile owned and driven by Defendant-Hingle. Plaintiff-wife was a passenger in the taxicab.
Plaintiffs charge both Defendants with joint and concurrent negligence. Each Defendant denied negligence, charging the other with sole responsibility for the collision.
Judgment was rendered in favor of Plaintiffs for $5,378.80, apportioned between them, respectively, as separate or community, against Defendant-Hingle only. Plaintiffs' suit against Defendant-Taxicab Company was dismissed. Only Plaintiffs have appealed.
The collision occurred on Christmas Day 1958, about 2:30 P.M., at the intersection of Elysian Fields Ave. and Chartres St., in New Orleans. Elysian Fields is located some distance below Canal St., parallel thereto, and is a boulevard running from the River to the Lake. It has two paved roadways, each about 44 feet wide, separated by an elevated neutral ground 48 feet wide. Chartres intersects Elysian Fields near the River, and is 29 feet wide.
The taxicab was travelling on Chartres, going north, and Hingle was travelling on Elysian Fields, going west, or from the River towards the Lake; hence, the locus of the collision was the intersection of *453 Chartres and the north roadway (for traffic going east to west) of Elysian Fields.
In order for the taxicab to reach the point of collision, it first had to cross the south roadway of Elysian Fields, a distance of 44 feet; and the neutral ground portion of 48 feet. The collision occurred when the taxicab reached the sidewalk curbing of the north roadway; so the taxicab travelled a distance of 136 feet from the time it first entered Elysian Fields at the intersection of Chartres and the south roadway of Elysian Fields.
There is no question that Elysian Fields was the favored Street, since Chartres is controlled by a "stop" sign; Elysian Fields is a boulevard thoroughfare; and Hingle was approaching from the taxicab's right. LSA-R.S. 32:237, subd. A.
The question presented is which vehicle had the right to enter the intersection first under the following conditions:
The taxicab driver came to a halt in obedience to the "stop" sign before entering the first or south roadway of Elysian Fields, concluded the road was clear, so proceeded to cross the south roadway and the neutral ground, and came to another stop at the second or north roadway. He saw Hingle approaching from his right about three-fourths of a city block away, or about 200 feet. Judging Hingle was travelling at lawful speed, he proceeded into the intersection of the north roadway about five miles an hour. When reaching the center of the roadway he discovered Hingle was on top of him, too late for him to avoid a collision, which occurred when the front of his taxicab reached the sidewalk curb of the north roadway.
The taxicab driver was corroborated by the only two disinterested witnesses, two regular bus drivers for the N. O. Public Service, Inc., who followed the taxicab all the way from Canal to Elysian Fields, 20 feet behind in a private passenger automobile.
That Hingle was not looking ahead and not observing traffic at the intersection was established by two phases of his testimony:
(a) When asked directly by his attorney if he was sure the taxicab did not stop before entering the north roadway of Elysian Fields, answered, "No, I don't know that." However, when prodded by his attorney, he insisted the taxicab had not stopped.
(b) He testified an automobile was travelling in the lane to his left, ten feet ahead, when he was 25 feet from the intersection. The two disinterested bus drivers of the Public Service and the taxicab driver, all testified there was no such vehicle.
It is apparent that, if such a vehicle had been travelling as Hingle testified, a collision would have occurred between the taxicab and that vehicle, not Hingle's.
Hingle was returning from a Christmas dinner and had with him his wife, his children and parents. Why his wife or his parents did not testify in his behalf, was not explained, creating doubt that their testimony would have been favorable.
Hingle's negligence is conclusive in view of the finding of the District Court, from which Hingle has not appealed. Hence, we have only to decide whether the taxicab driver was guilty of any degree of negligence in entering the north-bound roadway of Elysian Fields when he did.
Concededly, as a common carrier a taxicab must be held to the highest degree of care in transporting its passengers, but is not an insurer of their safety. If the taxicab was guilty of the least negligent act of commission or omission that contributed to the collision, it would be liable for the injury to Plaintiff. Cox v. Toye Bros. Yellow Cab Co., La.App., 144 So.2d 448.
The picture we get from the evidence, particularly that of the two disinterested experienced Public Service bus drivers, who were eye witnesses is: The taxicab came to a complete stop before entering either *454 intersection of Elysian Fields roadways. When the taxicab came to a stop at the downtown or north roadway, the Hingle vehicle was 200 feet or more away, travelling at a speed of 35 to 40 miles an hour. The taxicab then entered at a speed of five miles an hour. As the front of the cab reached the sidewalk curb on the downtown or north roadway, the cab's right rear bumper and fender was struck by the Hingle vehicle with such force that the cab was turned half-way around, facing in the opposite direction from which it came, the rear door forced open and Mrs. Duane catapulted into the street. One of the disinterested witnesses (the Public Service bus driver) testified the taxi could have made it across a few seconds earlier. The cab driver testified he moved across the intersection slowly because pedestrians were on the sidewalk at a funeral home on the other side.
The negligence vel non of the taxicab is governed by the "prudent driver" rule. In Blevins v. Drake-Lindsay Co., La.App., 144 So. 257, the court said:
"If an automobile driver, acting as a reasonable, cautious, and prudent person, and not being aware that a car he sees at some distance away is exceeding the speed limit, believes that he will be able to drive over an intersection in safety, it is not negligence in him to proceed to cross the intersection. A driver is not required to do what often is an impossibility, that is, to determine whether or not an approaching automobile on another street is violating the speed limit. As stated, the test is not the actual speed which the other car is making, but rather whether or not the driver of the car attempting to cross the intersection in front of oncoming car, acted as an ordinary, prudent, reasonable, and cautious person would have done under similar circumstances."
To the same effect is Wilson v. New Amsterdam Casualty Co., La.App., 180 So. 870. There, the Court held that an automobile driver, entering intersection of street on which he was driving with right-of-way street when truck, approaching from his right on latter street, was between 65 to 70 feet from intersection, was justified in assuming he had ample time to clear intersection before truck reached it, and that truck driver would yield right-of-way. The automobile driver was held not guilty of contributory negligence arising from collision between truck and automobile at point in intersection 36 feet from where he entered it.
In Sweeney v. New Orleans Public Service, La.App., 184 So. 740, it was held that, where bus driver, approaching intersection, looked to the right and seeing no approaching traffic within 70 or 80 feet of the intersection, proceeded to cross at a lawful rate of speed, bus driver pre-empted the intersection, and was not negligent as respects bus company's liability for injuries to automobile guest who was injured when automobile struck rear end of bus as it was crossing intersection.
In Taylor v. Byrnes, La.App., 151 So. 235, the court held that a host on less favored street seeing motorist approaching intersection on right-of-way street, at a distance of about 230 feet, was not negligent in attempting to cross intersection ahead of such motorist. (Citing Hamilton v. Lee, La.App., 144 So. 249.)
In Gauthier v. Fogleman, La.App., 50 So.2d 321, it was held that a motorist should stop before entering right-of-way street and carefully observe traffic conditions, but he need not wait until no vehicle is in sight before attempting to cross. If approaching vehicle is at such a distance that a reasonably prudent person would think crossing might be made without danger of collision, he is justified in crossing. The approaching car was 60 to 70 feet, or one-half city block, distant from the intersection.
The court further held that an automobile approaching intersection is entitled to assume *455 that automobile on other street will approach at moderate speed and observe speed regulations; and where motorist stopped before entering right-of-way street and attempted to cross when automobile approaching at right angle was one-half city block distant and approaching automobile collided with her, motorist was not negligent in attempting to cross.
In Phillips v. New Amsterdam Casualty Co., La.App., 6 So.2d 96, it was held that before attempting to cross a right-of-way street, all a motorist need do is to stop and make proper observation of traffic conditions; but was not bound, after stopping, to look entire length of street, or to await the passing of distantly approaching automobiles; and was entitled to believe that any on-coming automobile would be travelling at a lawful speed. 5 La.Law Rev. 434.
In view of these facts and the "prudent driver" rule, we cannot see where the taxicab driver was guilty of any negligence whatever, either of commission or omission; otherwise a car must always enter such an intersection at its peril, and thereby become an absolute insurer of its passengers. In order to exculpate the taxicab driver, the district judge, who saw and heard the witnesses, necessarily had to come to the same conclusion.
For the above reasons, the judgment of the District Court is affirmed; Plaintiffs to pay all costs in both Courts.
Affirmed.
TURNER, Judge (dissenting).
The majority opinion in this case affirmed the judgment of the lower court in dismissing the case against Toye Bros. Yellow Cab Company. The opinion recognizes the rule of law that a public carrier must be held to the highest degree of care in transporting its passengers, but is not an insurer of their safety.
Burden of proof in a case wherein a public carrier undertakes to deliver a pay passenger to a destination, when that passenger is injured en route, is upon the public carrier to show that the injury was not occasioned by any negligence, lack of care or vigilance on the operator's part. This has been held in many cases and I consider that proposition of law well settled.
In Oppenheim v. Toye Bros. Yellow Cab Co., La.App., 7 So.2d 420, the court said:
"It is well established that a carrier of passengers is not an insurer, but it is required to exercise the highest degree of care, vigilance and precaution for the safety of those it undertakes to transport and is liable for the slightest negligence. In truth, in many cases, the fact of injury to a passenger gives rise to the presumption that the carrier was negligent, `since, under ordinary conditions, with proper direction and control, taxicabs do not collide with other vehicles. Hamburger v. Katz et al., 10 La.App. [215] 217, 120 So. 391.' Dawson v. Toye Bros. Yellow Cab Co., Inc., et al., 15 La. App. 326, 131 So. 716.
* * * * * *
"It is also well established in our jurisprudence that, where a passenger is injured in an accident and has failed to reach his destination in safety, the burden is on the carrier to prove itself free from fault, but it is not required to show how and why the passenger was injured in order to bar recovery. * * *
"In the use of public highways and streets, it must be conceded that, besides other risks which are attendant to that mode of travel, one of the greatest hazards is that of collision. Where such is the case, if the carrier is free from fault and the accident has been occasioned exclusively through the negligent act of a third party using the highway, then the carrier is not liable to its passengers who may be injured thereby. * * *" *456 See, also, Johnson v. Continental Southern Lines, Inc., La.App., 113 So.2d 114, 74 A.L.R.2d 1328; Coleman v. Continental Southern Lines, Inc., La.App., 107 So.2d 69; Murphy v. Henderson, La.App., 23 So.2d 369; Upton v. Bell Cabs, Inc., La. App., 154 So. 359.
After a careful review of the evidence in the case, we are compelled to disagree with the findings. In my opinion the driver of the taxicab was guilty of gross negligence even under his own testimony. I have no quarrel to make with the finding of the majority that Hingle was guilty of actionable negligence and that the judgment as to him from which no appeal was taken was correct pretermitting the question of quantum. I realize that in cases of this type resulting from damages occasioned by intersectional collisions that each case must stand on its own merits according to the testimony adduced.
The testimony in this case is conflicting and at variance in many respects, but considering it as a whole and in a light most favorable to the defendant taxicab company, I have no difficulty in finding gross negligence on the part of the taxicab driver. The plaintiff passenger testified that the taxicab driver was busy lighting a cigar at the time he entered the intersection. The driver admits he was smoking a cigar but denies that he was lighting it. Hingle, the driver of the Mercury, testified that the taxicab failed to stop at the intersection. The taxicab driver testified that he did stop at the intersection and also at the neutral ground before entering Elysian Fields in the path of the Hingle car. The testimony of one Raynes was taken by deposition and when the deposition was offered in evidence, an objection was made to the offering and as far as I can determine, the deposition was never filed in evidence. However, since the majority opinion has considered it, I will likewise consider it. Both Raynes and Giroir, the disinterested witnesses referred to in the majority opinion, testified that the taxicab did stop at both points, and I am inclined to the belief that he did stop. Raynes testified that in his opinion the Mercury was making between 55 and 60 miles per hour. Giroir testified that the Mercury was going 35 or 40. Hingle testified he was going 35 or 40 and the majority opinion fixed the speed at 35 to 40 miles per hour and the distance from the intersection when first observed by the taxicab driver as 200 feet. Conceding that the taxicab driver stopped for the second intersection, it was then his duty to see that the intersection could be negotiated with safety to his passenger.[1] *457 He testified that he looked to his left and to his right and he saw the approaching Hingle car and thought he had ample time within which to negotiate the intersection in safety. He also stated that there was quite a bit of activity across the intersection at the crossing of Chartres Street on the downtown side of Elysian Fields, and that he proceeded into the intersection at a speed of 5 miles per hour, keeping a particular lookout for pedestrians at that point. He stated that he looked back in time to see the Hingle car about to hit him and made some exclamation for the benefit of his passenger.
I think that the testimony as to the speed of the Hingle car and the distance from the intersection when first observed by the taxicab driver is of the utmost importance. He fixes the distance when he first observed the Mercury at three-fourths of a city block and determined that he had ample time to safely negotiate the intersection at a lawful rate of speed. There is no evidence in the record as to what the lawful rate of speed is on that street, but it is generally conceded to be 35 miles per hour, and assuming this to be true, and assuming a city block to be 300 feet, I think, under that set of facts, that the driver of the taxicab convicts himself of gross negligence. When he determined that he had time to negotiate the intersection, and considering the fact that his reaction time to start his car in forward motion from this stopped position consumed a matter of a second or so, and the further fact that he testified that he was proceeding at the rate of 5 miles per hour, then according to the universally accepted charts on speeds and distances, he was driving 7 feet per second. Assuming that the Mercury was traveling at the rate of 35 miles per hour, he was traveling 51 feet per second with no deduction for reaction time because of the fact that he was already in motion. To figure this out to its conclusion, in view of the fact that Elysian Fields is 44 feet wide at that point, collision would have been inevitable between the two vehicles, unless one or the other took some measures to avoid it, the taxicab driver by accelerating his speed or the Mercury by diminishing his and possibly passing to the rear of the taxicab. Of course these ponderables do not concern the plaintiffs in the case under the safe delivery rule cited in the cases above.
The majority opinion places great stress upon the testimony of the two disinterested witnesses who were in the automobile following the taxicab. In the writer's opinion, if we accept that testimony, the taxicab driver is still guilty of some negligence. The witness Raynes testified that when he saw the approaching Mercury, after he had gotten into the neutral ground portion of Chartres Street, that it appeared to be making 55 or 60 miles per hour and that it was a half block away. He estimated the half block away to be about 75 or 100 feet. Of course, if that testimony is correct, then the action of the taxicab driver in pulling his car out into the path of that speeding vehicle would be nothing short of suicidal, assuming that the taxicab driver saw the same situation and at the same time that Raynes did.
Raynes testified that he did not recall whether or not there was a car ahead of the Mercury on Elysian Fields traveling in the same direction. Hingle said there was such a vehicle traveling about 10 feet ahead of *458 him and to his left. Mrs. Duane also said there was. If he was correct in this assertion and as to his distance, I agree with the majority opinion that the taxicab would more than likely have collided with that vehicle than with the Mercury. The witness Giroir, who was in the car following the taxicab, testified that he did not think the driver of the Mercury applied his brakes nor reduced his speed at any time. He also testified he did not know whether or not the taxicab accelerated its speed to try to get out of the way of the Mercury. It is obvious that Giroir also noticed the danger of entering the intersection in the face of the oncoming Mercury as he testified that he told Raynes "Hold it. This car is coming. Don't try to make it," and it was construed by all that he meant by that that the Mercury was proceeding at a fast rate of speed. So from the testimony of these two disinterested witnesses, I feel that gross negligence on the part of the taxicab driver has been overwhelmingly established.
The situation presents a case wherein a matter of seconds as to time and feet as to distances plays a major part, and the writer feels that because the taxicab driver left a parked position of safety and proceeded into the intersection in face of an imminent danger to his passenger, which was observed and recognized by these two disinterested witnesses, there is no escape from finding his negligence as a contributing cause to injuries received by the passenger. I think that the defendant taxicab company totally failed to exculpate and extricate themselves from the situation and that they should also be held responsible for the damages received by plaintiffs.
My view of the case is that the taxicab driver who was shown to be 68 years of age and wore glasses erroneously estimated the distance and speed of the Hingle car and tried to cut the cloth too close to fit the pattern with disasterous results.
The majority opinion in this case is predicated on the prudent driver rule. I recognize the prudent driver rule and have no quarrel with the cases cited thereunder. A study of those cases, however, reveals that they do not include a situation wherein both a public carrier and the stop street, as opposed to right of way street, are involved. In this case, however, as I view the evidence, the taxicab driver cannot qualify under the prudent driver rule.
The record in this case is in such disorder that it is difficult for the writer to determine with any degree of certainty what was proved and what was not proved in this case. I find in the record no evidence whatever of the speed limits at the location in question. I find a number of documents filed in the record but not marked "filed in evidence," and I fail to find any authority for these documents being in the record. I refer to a police report marked "F," and with a notation "filed 9/3/61." What appears to be a component part of this "F," as it bears the same number but is unidentified is marked "filed October 3, 1961," one month after the filing of the Exhibit "F." At the beginning of the trial of the case there was some attempt to have a witness testify from this police report, but the judge apparently sustained the objection, and there is no showing that the report was ever filed in evidence but somehow made its way into the record and into this court. I also find some correspondence between the Department of Streets and counsel for plaintiffs, which is ex parte and apparently filed without any authority or without the opponents having an opportunity to object or to cross-examine the witness making the statements contained therein.
For the reasons assigned, I respectfully dissent from the majority opinion upholding that part of the judgment dismissing the suit against the defendant partnership Toye Bros. Yellow Cab Company.
NOTES
[1] "A motorist who stops in obedience to a stop sign is further required, before starting forward, to make careful appraisal of traffic conditions in intersection and to refrain from proceeding in the face of obvious or possible danger, otherwise he is guilty of gross negligence." (Italics ours.) Syllabus No. 7, Wise v. Prescott, La.App., 4th Cir., 142 So.2d 613.

"It will, therefore, be appreciated that the testimony of Maloz is sufficient to warrant a finding of negligence against him. He occupied a position of safety and without exercising reasonable precautions which the law ordains and which common sense dictates maneuvered his automobile from its position of safety into heavily trafficked Freret Street, a preferential thoroughfare. If Maloz, who was in the less favored street, actually did stop at the corner he discharged but a part of the duty imposed upon him. He was required to go further than merely bringing his vehicle to a stop. This action must be followed by a careful appraisal of traffic on the right of way street and no entry should have been made therein unless conditions clearly warranted it. Harrell v. Goodwin, La.App., 32 So.2d 758; Porter [for and on behalf of Porter] v. deBoisblanc, La.App., 64 So. 2d 864." Maloz v. New Orleans Public Service, La.App., Orleans, 65 So.2d 339.
"Here we find the plaintiff, after stopping at the intersection and observing the approaching car at which she describes as three quarters of a block away, attempting to cross the distance of forty feet or more at a speed of only five miles an hour without having any idea of the speed of the approaching car and without observing or paying any attention to that car after she saw it for the first and only time. We feel certain that any reasonable person would realize the serious danger of a collision involved in crossing into the path of the approaching car in such a manner and at such a speed. Accordingly, we hold the plaintiff guilty of contributory negligence." Gallioto v. Chisholm, La.App., 4th Cir., 126 So.2d 63.
In Chiasson v. Connecticut Fire Insurance Company, La.App., 144 So.2d 726, reversing the lower court, it is stated as follows:
"Regardless of whether Mrs. Cormier stopped at the stop sign and then crept out past the parked cars or whether she did not stop but drove into the intersection at 20 miles per hour, she was obviously negligent in proceeding out into the path of an oncoming automobile which was on a right of way street. * * *"