153 So.2d 463 (1963)
Richard EASTER, on Behalf of/and Administrator of the Estate of His Minor Son, Ricky Scott Easter
v.
Clementine DAVIS and the Northern Insurance Co. of New York, New York.
Juliette ALEXANDER, Wife of/and William ODDO
v.
Clementine DAVIS, and her insurance carrier, Northern Insurance Co. of New York, New York.
Nos. 966, 967.
Court of Appeal of Louisiana, Fourth Circuit.
May 6, 1963.
Rehearing Denied June 4, 1963.
Certiorari Refused June 28, 1963.
*464 Bienvenu & Culver, P. A. Bienvenu, New Orleans, for defendants-appellants.
Brierre & Stephenson, Eugene D. Brierre and Peter J. Compagno, New Orleans, for plaintiffs-appellees.
Thomas G. Rapier and John V. Baus of Jones, Walker, Waechter, Poitevent, Carrere & Denegre, New Orleans, for amicus curiae, The Travelers Ins. Co.
Before McBRIDE, SAMUEL and HALL, JJ.
Rehearing Denied in No. 966, June 4, 1963.
HALL, Judge.
These two matters (our docket numbers 966 and 967) were consolidated for hearing in this Court. They involve appeals from judgments rendered in two suits consolidated for trial below since they arose out of the same intersectional collision.
The accident happened at about 3:15 P.M. on Mardi Gras day, March 1, 1960 at the intersection of Toledano and South Galvez Streets in the city of New Orleans when a Ford Thunderbird automobile owned by Dutch O'Neal Motors Inc. and driven by Richard Easter was involved in a collision with a Mercury 4-door sedan owned and operated by Mrs. Clementine T. Davis.
Both suits are for the recovery of damages for personal injuries suffered by guest passengers who were riding in the Easter vehicle and both suits are directed against Mrs. Davis and her liability insurer.
In our No. 966, Richard Easter brought suit against Mrs. Davis and her insurer on behalf and for the benefit of his minor son, Ricky Scott Easter, aged 11. In our No. 967 Mr. & Mrs. William Oddo sued Mrs. Davis and her insurer for the personal injuries received by them in the accident.
The defendants answered both suits denying any negligence on the part of Mrs. Davis and averring that the sole proximate cause of the accident was the negligence of Richard Easter, driver of the Thunderbird. In the alternative defendants plead contributory negligence on the part of Richard Easter and also independent contributory negligence on the part of each plaintiff. Further in the alternative defendants set up settlements between all parties injured in the accident and Travelers Insurance Co., the liability insurer of Richard Easter and Dutch O'Neal Motors Inc., whereby Ricky Scott Easter received $50.00, Mrs. Oddo received $4,000.00 and Mr. Oddo received $1,750.00, and the defendant, Clementine Davis, received $3,000.00 from Travelers Insurance Co. and each granted that company a full release from all liability. Defendants also filed in each of the cases a third party action against Richard Easter praying for contribution from him as a joint tort feasor in the event defendants should be cast in judgment.
The District Judge being of the opinion that the drivers of both vehicles were concurrently negligent, rendered judgment in our No. 966 in favor of Ricky Scott Easter (sic) against Mrs. Davis and her insurer in solido for $4,000.00 plus interest and costs; and in favor of Mrs. Davis and her insurer against Richard Easter, as a third party defendant, for contribution in an amount equal to one-half of the judgment if they paid it in full. From this judgment Mrs. Davis and her insurer appealed. Richard *465 Easter, on behalf of his minor son, also appealed on the ground that the judgment in Ricky's favor is inadequate, but failed to perfect his appeal and relies instead on an answer which he filed to defendant's appeal.
In our No. 967 the District Judge rendered judgment in favor of Mrs. Oddo against the defendants in solido for $4,500.00 plus interest and costs; dismissed Mr. Oddo's claims, holding he was contributorily negligent; and rendered further judgment in favor of Mrs. Davis and her insurer and against Richard Easter, as third party defendant, for contribution in an amount equal to one-half of the judgment in favor of Mrs. Oddo if they paid it in full. Mrs. Davis and her insurer appealed; Mr. & Mrs. Oddo and likewise Richard Easter appealed, but their appeals were not perfected and they rely instead upon answers which they filed to the appeal of Mrs. Davis and her insurer.
The primary question presented for our consideration is the negligence vel non of each of the drivers of the vehicles involved in the collision.
Toledano Street is a paved thoroughfare which runs in a river-lake direction, consisting of two 34 roadways divided by a wide neutral ground. The roadway on the uptown side accommodates traffic going towards the river while the roadway on the downtown side accommodates travel proceeding in the opposite direction. Each of the roadways is sufficiently wide to permit at least two lanes for moving traffic in addition to a lane for parking, but the lanes are not marked off. The speed limit on Toledano is 35 miles per hour. South Galvez Street runs in an uptown-downtown direction and crosses Toledano Street at right angles but in such a way as to form an unusual intersection. On the downtown side of Toledano, South Galvez Street is a two-way street consisting of dual paved roadways divided by a neutral ground. These dual roadways are continued through the neutral ground of Toledano Street in such manner that a portion of the Toledano Street neutral ground is left as an island between them. On the uptown side of Toledano Street, South Galvez consists of a single narrow roadway which accommodates travel going in both directions. An automobile travelling uptown on South Galvez, after crossing over the downtown or lakebound roadway of Toledano, arrives in the neutral ground of Toledano on the lake side of the little island, and since the entrance to South Galvez on the uptown side of Toledano is not opposite the lake side of the island but is off-set about 15 to the left, one wishing to continue uptown on South Galvez Street must, as he crosses over the upper roadway of Toledano, first execute a curve to the left and then straighten out to the right in order to enter South Galvez. The witnesses described it as an "S" or "snake" manoeuvre.
At the time in question Richard Easter was driving a Ford Thunderbird automobile on the upper roadway of Toledano proceeding in the direction of the river. He had as passengers in the Thunderbird his 11 year old son, Ricky, who was sitting in the right front bucket seat, and Mr. & Mrs. Oddo, who were occupying the rear seat.
Mrs. Davis had been driving toward the lake on the lower roadway of Toledano, and had made a left turn at South Galvez Street into the neutral ground area of Toledano on the lake side of the island. Her intentions were to cross over the upper roadway of Toledano and to proceed uptown on South Galvez. She was alone in her car.
The testimony is conflicting but from an analysis of the testimony and evidence adduced during the trial we find the following facts:
The collision occurred as Mrs. Davis was executing the "S" or "snake" manoeuvre across the upper roadway of Toledano. The right front of the Thunderbird struck her Mercury sedan on the right side behind the rear wheel and near the right end of the rear bumper. Her car *466 was spun around clockwise, throwing her into the street, and came to rest on the sidewalk on the uptown river side of the intersection. After the impact the Thunderbird veered to the left, its left wheels striking the iron curbing of the island, thence passing over the river side roadway of the island, striking the curbing of the neutral ground proper, continuing a distance in the neutral ground and finally came to rest in the middle of the upper roadway of Toledano, a distance of 105 from the point of impact. Everyone in the Thunderbird was injured. Mr. Oddo was thrown from the rear seat through the windshield. Mrs. Davis was also injured. The Thunderbird was completely demolished, while the Mercury could not be moved under its own power.
The district judge found, and the record clearly reveals, that Richard Easter had been proceeding on Toledano Street at an excessive and reckless rate of speed, which some of the witnesses estimated to be 60 or 65 miles per hour. His car left 70 of skid marks before the point of impact and 105 of skid marks after the collision. He had also been drinking. He admitted that he had had at least three drinks, maybe four, each drink consisting of two inches of whiskey in a paper cup topped with a soft drink. He and Oddo admitted drinking a pint of whiskey between them while watching a parade that morning but Easter stated that his last drink was consumed about an hour and a half prior to the collision. The record leaves an inference that Easter had consumed more whiskey than he admitted but there is no testimony as to how he was affected by it. At any rate Easter's negligence is clear.
The District Judge held that Mrs. Davis was concurrently negligent, basing that on his finding that Mrs. Davis did not come to a stop in the neutral ground before proceeding to make a left hand turn into the upper roadway of Toledano and also on his finding that "Mr. Easter's car was going so fast that anyone within a 100 yards of his car would see that he was driving at a terrific rate of speed."
The evidence is conflicting as to whether Mrs. Davis came to a stop before leaving the neutral ground; but the mere fact that she did not come to a complete stop, if such be the case, in our opinion, did not, constitute negligence on her part. There were no stop signs in the neutral ground area and there is no law or ordinance compelling a vehicle to come to a stop before leaving the neutral ground. The only duty Mrs. Davis owed was to yield the right of way to vehicles approaching in close proximity from her right.
Mrs. Davis testified that before entering the upper roadway of Toledano Street she looked to the right, and seeing the Easter car a block away, she proceeded out into the intersection at a slow rate of speed which she judged to be 10 or 15 miles per hour. The Easter car was a sufficient distance away to lead her reasonably to believe that she could cross in safety. She had a right to assume that the driver of the approaching car would obey the speed limit, and we do not think she acted unreasonably in attempting to cross unless she knew or had some actual indication that it was being driven at an illegal and excessive rate of speed.
"If an automobile driver, acting as a reasonable, cautious, and prudent person, and not being aware that a car he sees at some distance away is exceeding the speed limit, believes that he will be able to drive over an intersection in safety, it is not negligence in him to proceed to cross the intersection. A driver is not required to do what often is an impossibility, that is, to determine whether or not an approaching automobile on another street is violating the speed limit. As stated, the test is not the actual speed which the other car is making, but rather whether or not the driver of the car attempting to cross the intersection in front of an oncoming *467 car, acted as an ordinary, prudent, reasonable, and cautious person would have done under similar circumstances." Blevins v. Drake Lindsay Co., La.App., 144 So. 257. See also Duane v. Toye Bros. Yellow Cab Company, La.App., 148 So.2d 451 and cases there cited.
Mrs. Davis testified repeatedly that when she saw the approaching car she could not and did not observe its speed and persisted in this statement throughout vigorous cross examination. We see no reason to disregard her sworn statement in this regard in spite of the fact that in an unsworn statement given by her to an insurance adjuster there appears the following: "It was apparent to me that the other car was proceeding at a terrific rate of speed."
"Sworn declarations from the witness stand should prevail over unsworn statements which might seemingly contradict the testimony, and it is equally true that the unsworn statement does not prove the recitals thereof when the witness is not under oath." Coker v. Nola Cabs, Inc., La.App., 81 So.2d 65. See also Leininger v. New Orleans, Ry. and Light Co., 150 La. 1089, 91 So. 521; Passera v. United States Guarantee Co., La.App., 187 So. 345; Sentell v. Warmsley, La.App., 157 So. 152; Galt v. Travelers Ins. Co., La.App., 141 So. 105; Delcourt v. Bernard, 18 La.App. 616, 136 So. 909.
While the general rule is as above stated the jurisprudence is to the effect that the Courts will look to the facts and circumstances in each particular case to determine what effect should be given to testimony in conflict with prior unsworn statements.
In the instant case there was no finding by the District Judge that Mrs. Davis knew the speed the Easter car was travelling. What he concluded in effect was that she should have been able to see from a block away that it was coming at a terrific rate of speed. We are unable to agree with this conclusion. We do not believe that it is possible for a motorist in a quick glance to judge the speed of a car coming toward him from a block away, and the motorist is not required to keep it in view until he can determine its speed by contrasting its movement with stationary objects along the street. He has a right to assume that it is approaching in a legal manner.
We do not find that the circumstances of this case indicate any negligence on the part of Mrs. Davis. Our conclusion is that the sole and proximate cause of the accident was the excessive speed of the Easter vehicle.
For the foregoing reasons both judgments appealed from are reversed; the suit of Richard Easter on behalf of the minor, Ricky Scott Easter, (Civil District Court No. 387-223) is dismissed, costs in both courts to be borne by him; and the suits of Juliette Alexander, wife of/and William Oddo (Civil District Court No. 388-479) are dismissed, costs in both courts to be borne by them.
Reversed.