HALL, Judge.
This appeal is from a judgment in favor of plaintiffs-appellees for damages arising out of an accident in which an automobile occupied by plaintiffs was struck from behind by a truck driven, owned and insured by defendants-appellants.
After carefully reviewing the record, we adopt the findings of fact and conclusions of the district court as expressed in the following comprehensive written opinion:
“On October 25, 1972, Eva Pardue was driving her 1960 Ford sedan in a westerly direction on Louisiana Highway 33, traveling from Marion to Farmerville in Union Parish, Louisiana. Eunice Gillum was riding as a passenger on the front seat beside Mrs. Pardue. The weather was clear and the road surface dry. The highway in question is a two lane blacktop road. At approximately 10:20 o’clock A.M., at a point about three miles northeast of the Farmerville city limits, the Pardue vehicle was struck from the rear by a 1972 Mack truck-tractor driven by James D. Rockett and owned by Raymond Johnson. As a result of the collision, the Pardue automobile was demolished and the occupants hospitalized with serious injuries.
“This suit was filed by Eva Pardue and Eunice Gillum against James D. Rockett, Raymond Johnson and the latter’s liability insurance carrier, Employer Insurance Company of Wausau, for the damages allegedly sustained by the plaintiffs as a consequence of the described accident. After setting forth particulars assertedly constituting negligence on the part of Rockett, the plaintiffs also contend that the truck driver had the last clear chance to avoid the accident. Defendants answered denying that Rockett was negligent and alleging that the accident was caused by Mrs. Par-due making a sudden stop in the path of the truck without giving any prior signals of her intention to stop. Contributory negligence on the part of Mrs. Pardue was specially pleaded. In addition, the defendants joined Mrs. Pardue as a third party defendant, averring that if Rockett was deemed negligent, then Mrs. Pardue was also guilty of negligence which contributed to the accident and would be liable for one-half of any sum found to be owed by defendants to Mrs. Gillum. Mrs. Pardue answered the third party demand and made her liability insurance carrier, the Continental Insurance Company, an additional third party defendant. Continental Insurance Company filed an answer, admitting the existence of its policy and pleading the policy limits.
“LIABILITY
“Except for the critical question of whether Mrs. Pardue stopped suddenly just prior to the collision, the facts of this accident are largely undisputed. Rockett had been to Huttig, Arkansas, and was returning to Lillie, Louisiana, with his large Mack truck loaded with sawdust. He was familiar with the road, having sometimes made this same trip as many as four times in one day. He had been following the Pardue car for some four or five miles prior to reaching the accident site, varying the distance between the two vehicles from two to four car lengths or from 40 to 80 feet. Both vehicles were traveling at speeds of between 30 and 40 miles per hour. Because of its size and the weight of its load the truck would slow down on inclines and accelerate when going down hill. The variations in road conditions presumably accounted for the fluctuation in the distance between the two vehicles, as they traveled toward Farmerville.
“Since the highway was fairly level for about 500 feet back from the accident site in the direction from which the vehicles were coming, Rockett should have been able to have continuous observation of the Pardue car over that section of the highway. Although there was a slight dip in the road, because of the height of the *684 truck cab, this would not have obscured the driver's vision of a preceding automobile. As Mrs. Pardue passed an intersecting road and a place of business known as Kennedy’s Store situated on her right side of the road, the rear of her car was struck by the right front of the Mack truck. The force of the impact knocked the Pardue vehicle into a telephone pole on the right side of the road. The car then bounced back into the highway and came to rest facing back in the direction from which the occupants had been traveling.
“Photographs received in evidence showed damage to the right front of the truck (P-2) and the rear of the car (P-7). Examination of the latter picture reveals that the primary point of impact to the car appears to have been on the left rear, considering the angle at which the rear bumper was bent. Skid marks on the road surface with reference to the point of impact indicate that the truck brakes were not applied with force until the truck was a few feet from hitting the rear of the car (P-11). The collision occurred in both vehicles’ right lane of traffic.
“The general rule concerning the duty of the driver of a following vehicle is enunciated by LSA-R.S. 32:81 as follows:
‘The driver of a motor vehicle shall not follow another vehicle more closely than is reasonable and prudent, having due regard for the speed of such vehicle and the traffic upon and the condition of the highway.’
“It is a firmly established tenet of our law that the operator of a following vehicle is required to keep his car under control, to closely observe the forward vehicle and follow at a safe distance. If a rear-end collision occurs, the following motorist is presumed to be negligent. Palmisano v. Thibodeaux (La.App.1969) 219 So.2d 196; Calvert Fire Insurance Company v. Barlow (La.App.1968) 215 So.2d 392; Walters v. Seven Up Bottling Co. of Alexandria, Inc. (La.App.1968) 212 So.2d 443.
“The Louisiana Supreme Court in the case of Burns v. Evans Cooperage Company (1945) 208 La. 406, 23 So.2d 165, elaborated upon this rule of law as follows:
‘It is the duty of the driver operating an automobile, upon approaching another automobile, from the rear while both cars are traveling in the same direction, to exercise a great deal of care. He must look out for the person ahead, realizing that that person is engaged in handling a high-powered machine requiring constant attention and that his lookout is forward and not backward. The driver of the rear car must keep a safe distance behind the front car and must have his machine under such control as to avoid injury to the car ahead or to his own car so long as the driver of the front car is driving in accordance with his rights.’
“There is an exception to this rule that the following motorist is presumed negligent where a rear-end collision occurs. The exception is operable when the lead vehicle negligently and without warning-stops or suddenly slows down, thereby creating a hazard for the following driver. Calvert Fire Insurance Company v. Barlow, supra; Porter v. Barron (La.App.1966) 185 So.2d 304. The burden of proving the exceptional circumstances is upon the following motorist who makes this allegation.
“Since it was established that the Mack truck ran into the rear end of the Pardue car, it is presumed that the truck driver was negligent. Defendants then had the burden of proving the allegation that Mrs. Pardue made a sudden stop without signaling in front of the truck. They sought to sustain this burden by showing that Mrs. Pardue made an admission to this effect immediately after the accident to Sgt. A. C. Buckley, the investigating officer, Jerry Antley, a bystander, and Jerome McKenzie, *685 the ambulance driver who picked up the injured parties. However, no one of these witnesses testified upon the trial that Mrs. Pardue admitted making a sudden stop. Mrs. Pardue did tell them that she had passed a road, just before reaching Kennedy’s store, upon which she had planned to turn. However, upon realizing her mistake, she proceeded on to Farmerville.
“It developed at the trial that the only witness who could testify as to the accident itself was Rockett, the truck driver. At the time of the trial, Mrs. Pardue was 61 years of age and Mrs. Gillum was 67 years of age. Both suffered from shock immediately after the accident and neither could remember any details of the accident. As a matter of fact, Mrs. Gillum’s memory in general has deteriorated as a result of her injuries.
“It is particularly noteworthy that nowhere in his testimony does Rockett state that Mrs. Pardue stopped suddenly in front of his truck. To say the least, the truck driver’s testimony taken as a whole does not present a very coherent picture of the circumstances surrounding the collision. When questioned by Sgt. Buckley concerning the position of the Pardue vehicle prior to the accident, Rockett never states that he saw the car come to a stop. He merely claimed that it was stopped when he saw it. The following colloquy between one of the counsel and Rockett is particularly significant (Transcript pages 91 & 92):
Q. In other words, it was stopped or barely moving?
A. Right.
Q. And you don’t remember ever saying that it was backing up, do you?
A. No, sir.
Q. How far were you back from the Pardue vehicle immediately prior to this accident?
A. Sir, I don’t know. I don’t know how you would say that.
Q. Didn’t you previously testify that during the entire time that you had been following the Pardue vehicle that your distance behind the vehicle had varied from three car lengths to five car lengths and maybe sometimes a little closer than three ?
A. Yes, sir, it varied.
Q. And say you never would have been more than about five, six or seven car lengths behind.
A. Right.
Q. Even stretching your estimation.
A. Right.
Q. So with you following her at seven car lengths behind, you are saying that she stopped there in the road before you realized or almost stopped, before you realized that she was making doing anything?
A. Yes, sir.
Q. And she went from approximately your same speed down to zero or almost zero—
A. Right.
Q. While you were five car lengths behind her and then you had time to hit your brakes well in advance of the collision?
A. Right.
Q. And you never did see a^ brake light.
A. There were no brake lights.
Q. After the accident happened, did you, yourself, walk around the accident scene and just like of look around ?
A. Yes, sir, I did.
*686 Q. Did you see anything like skidmarks or anything on the highway ?
A. From the truck or from the car?
Q. From anything.
A. I saw them from the truck.
Q. Did you see any from the car ?
A. No.
Q. When you are estimating car lengths, what do you mean by a car length? Twenty feet, thirty feet? What’s a car length ?
A. I guess it would be approximately twenty feet.
Q. Five car lengths should be about a hundred feet behind — five car lengths, then, would be about a hundred feet.
A. Five car lengths would be about a hundred feet, right.
Q. So you were a hundred feet behind and you are trying to tell us that you stopped or the Pardue vehicle stopped and then you left all of those skidmarks and all that happened in a hundred feet.
A. No, sir, I didn’t say how far behind —I didn’t say I was five car lengths behind that car. Because I don’t know how far behind the car I was.
“Rockett never testified that he saw the brake light on Mrs. Pardue’s car come on. There is no evidence that this light was not working. If Mrs. Pardue came to an abrupt stop and Rockett was maintaining a proper lookout, he would have seen the light come on. Furthermore, there is no evidence of skid marks on the road surface indicating that the Pardue car skidded. If Mrs. Pardue had been traveling at the speed described by Rockett and suddenly stopped, her tires would have left skid marks.
“In summary, defendants had the burden of proving that Mrs. Pardue suddenly stopped her car without warning in front of the Mack truck. They have not discharged that burden. Considering the entire record, it is more likely that the Par-due car slowed for the intersection and for the further distance during which time Mrs. Pardue realized that she had missed her turn. Before the car could regain its speed, Rockett, who was not keeping a proper lookout and was accelerating his heavily loaded truck, came upon the slowly moving vehicle before he realized it. He then attempted to pass to the left but could not avoid hitting the car on the left rear. This explanation of how the accident happened is consistent with the testimony of all the parties and with the physical evidence at the scene of the accident. It would explain why Rockett saw no brake lights, why the Pardue car left no skid marks and, most important, why the skid marks left by the truck began just a few feet before the point of impact.
“For these reasons, this Court concludes that the accident in question and plaintiffs’ resulting damages were proximately caused by the negligence of the defendant Rockett, and that the plaintiff Pardue was free of contributory negligence.
“QUANTUM
“In lieu of offering medical testimony the parties stipulated that, as a result of the accident of October 25, 1972, Mrs. Par-due sustained comminuted fractures of both heel bones, a fracture and dislocation of the left shoulder, and lacerations of the left knee and left eye. She was taken to the St. Francis Hospital in Monroe, Louisiana, immediately after the accident and remained there under treatment for nine days. Casts were applied to both legs, encasing them from the feet to the knees. The plaintiff had to wear the casts for *687 five weeks and was unable to walk for two months. Upon her release from the hospital, Mrs. Pardue went to the home of her daughter, Mrs. Annette Daniels, where she received nursing care until her discharge from medical treatment on April 5, 1973. For a period of about three months subsequent to the accident, Mrs. Pardue was unable to feed, bathe and dress herself. In addition, she had to receive assistance in going to the bathroom. The plaintiff was still experiencing some pain and discomfort at the time of the trial.
“Considering the nature and extent of her injuries, plaintiff Eva Pardue is entitled to recover from the defendants, James D. Rockett, Raymond Johnson and Employers Insurance Company of Wausau, the following damages:
(1) Damages to automobile $ 250.00
(2) Medical expenses 2,630.55
(3) Physical and mental pain and suffering 15,000.00
TOTAL $ 17,880.55
“The parties stipulated that Mrs. Gil-lum’s injuries consisted of multiple rib fractures on her right side, together with line fractures and deep cuts in her right hip. She was taken to the St. Francis Hospital in Monroe, Louisiana, immediately after the accident and remained there for treatment until November 13, 1972, when she was transferred to the Marion Nursing Home in Marion, Louisiana. Part of her medical treatment at the hospital included an exploratory laporotomy. Mrs. Gillum stayed at the Marion Nursing Home until December 18, 1972, during which time she was confined either to her bed or to a wheelchair. The remainder of this plaintiff’s convalescence was spent at the home of her sister, Mrs. B. L. Reppond, with whom she resided until July 1, 1973. During this recovery period she used a ‘walker’ in order to move around the house. At the time of the trial Mrs. Gillum supported herself with a cane when walking. Furthermore, as a result of the shock of the accident and resulting injuries she continued to suffer a general loss of memory.
“After considering the nature and extent of her injuries, the Court concludes that plaintiff Eunice Gillum is entitled to recover from the defendants, James D. Rockett, Raymond Johnson and Employers Insurance Company of Wausau, the following damages:
(1) Medical expenses $ 3,500.84
(2) Physical and mental pain and suffering 10,000.00
$ 13,500.84
“There will be judgment in accordance with this opinion.”
The key factual issue in this case is whether Mrs. Pardue stopped suddenly in front of the defendant truck driver, creating a hazard or emergency. Appellants take issue with the trial court’s finding that she did not. Appellants rely primarily on the testimony of the driver of the truck and some statements allegedly made by Mrs. Pardue shortly after the accident. They ¿rgue that the trial court put too much reliance on the absence of skid marks by the Pardue vehicle.
The testimony of the driver of the truck is inconclusive. Although he testified the Pardue automobile was stopped or almost stopped when he hit it, he never testified it stopped suddenly. He testified there were no brake lights, which there would have been if she had abruptly applied her brakes. It is true that Mrs. Par-due could have stopped suddenly without leaving skid marks, but the absence thereof was only one supporting circumstance relied on by the trial court. The evidence does not support appellants’ position.
The witnesses to whom appellants claim Mrs. Pardue made inculpatory statements did not testify to any such statements at the trial. Appellants sought to impeach these witnesses by prior statements made by them which to some extent attributed damaging statements to Mrs. Pardue.
*688 The prior extra-judicial statements of the witnesses might serve to destroy the effect of the witnesses’ testimony, but are not evidence of any fact other than that their testimony is not worthy of belief. State v. Ray, 259 La. 105, 249 So.2d 540 (1971); State v. Bodoin, 153 La. 641, 96 So. 501 (1923); Leininger v. New Orleans Railway and Light Company, 150 La. 1089, 91 So. 521 (1922); Taylor v. Firemen’s Insurance Company of Newark, N. J., 139 So.2d 782 (La.App.2d Cir. 1962).
Appellants take brief issue with the amounts of the awards made by the trial court, arguing particularly that the court was not warranted in finding any continued disability. The injuries to both plaintiffs were serious and we find the awards to be well within the much discretion of the trial court.
For the reasons assigned, the judgment of the district court is affirmed, at appellants’ costs.
Affirmed.